## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| NATIONAL PRODUCT ASSOCIATION,[1] | Case No. 19-11849 |
| Debtor. | |

## DEBTOR'S MOTION FOR ENTRY OF INTERIM AND FINAL ORDERS (A) AUTHORIZING THE CONTINUED USE OF THE DEBTOR'S CASH MANAGEMENT SYSTEM AND (B) EXTENDING THE TIME TO COMPLY WITH THE REQUIREMENTS OF SECTION 345(b) OF THE BANKRUPTCY CODE

The above-captioned debtor and debtor-in-possession (the "*Debtor*"), by and through its *proposed* counsel, submit this *Motion for Entry of Interim and Final Orders (A) Authorizing the Continued Use of the Debtor's Cash Management System and (B) Extending the Time to Comply with the Requirements of Section 345(b) of the Bankruptcy Code* (the "*Motion*"), seeking entry of interim and final orders, substantially in the forms attached hereto as **Exhibit A** and **Exhibit  B**, pursuant to sections 105(a), 345(b), and 363(b) of title 11 of the United States Code (the "*Bankruptcy Code*"), and Rules 6003 and 6004 of the Federal Rules of Bankruptcy Procedure (the "*Bankruptcy Rules*"), and Rules 2015-2, 4001-3, and 9013-1(m) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "*Local Rules*"), (i) authorizing, but not directing, the Debtor to continue using its cash management system, existing bank accounts, and business forms and (ii) granting the Debtor a forty-five (45) day extension to comply with the investment and deposit requirements of section 345(b) of title 11 of the United States Code (the "*Bankruptcy Code*"), if applicable, or file a motion seeking an additional extension or waiver of the requirements of section 345(b) of the Bankruptcy

---

[1]    The Debtor in this case, along with the last four digits of the federal tax identification number, is National Product Association (6719).  The Debtor's headquarters are located at 440 1st Street N.W., Suite 520, Washington, DC 20001.

Code. In support of this Motion, the Debtor incorporates by reference the statements contained in the *Declaration of Daniel Fabricant, Ph.D., in Support of the Debtor's Chapter 11 Petition and First Day Pleadings* (the "***First Day Declaration***") filed contemporaneously with this Motion and further respectfully states as follows:

## JURISDICTION AND VENUE

1.      The Court has jurisdiction over the Debtor, its estate, and this matter under 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware dated as of February 29, 2012. This is a core proceeding under 28 U.S.C. § 157(b).

2.      Venue is proper in this district under 28 U.S.C. §§ 1408 and 1409.

3.      Pursuant to Local Rule 9013-1(f), the Debtor consents to the entry of a final order by the Court in connection with this Motion, to the extent it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

4.      The statutory predicates for the relief requested in this Motion are sections 105(a) 345(b) and 363(b) of the Bankruptcy Code, Bankruptcy Rules 6003 and 6004, and Local Rules 2015-2, 4001-3, and 9013-1(m).

## BACKGROUND

**A.      THIS CHAPTER 11 CASE.**

5.      On the date hereof (the "***Petition Date***"), the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware (the "***Court***"), thereby commencing this case (the "***Chapter 11 Case***").

6.      The Debtor continues to be in possession of its property, to operate its business, and manage its property as a debtor-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

7.      No trustee, examiner, or official committee of unsecured creditors has been appointed in this Chapter 11 Case.

8.      Additional factual background regarding the Debtor, including its business operations, its capital and debt structures, and the events leading to the filing of this Chapter 11 Case, is set forth in the First Day Declaration, which is fully incorporated here by reference.

B.      THE DEBTOR'S BANK ACCOUNTS.

9.      As of the Petition Date, the Debtor currently maintains three (3) bank accounts, one at Eagle Bank and two investment accounts for the Reserves (as defined in the First Day Declaration) at Morgan Stanley (collectively, the "***Banks***") that are used in the ordinary course of the Debtor's business.

10.     **Schedule 1** attached hereto sets forth for each of the Bank Accounts the name of the institution at which the account is maintained, the account number (last four digits only) and a description of the purpose of the account. The Debtor manages its cash receipts, transfers and disbursements through the Bank Accounts.  In doing so, the Debtor routinely deposits, withdraws and otherwise transfer funds to, from and between the Bank Accounts by various methods including check, wire transfer, automated clearing house transfer and electronic funds transfer. On a daily basis, the Debtor processes several transactions through the Bank Accounts.  The Debtor maintains current and accurate records of all transactions processed through the Bank Accounts.

C.      **THE DEBTOR'S CASH MANAGEMENT SYSTEM AND BANK ACCOUNTS.**

11.      Prior to the Petition Date, in the ordinary course of business, the Debtor employed a cash management system to efficiently collect, transfer, and disburse funds generated by its business operations (the "***Cash Management System***").  The Cash Management System facilitates the Debtor's cash forecasting and reporting, as well as enables the Debtor to maintain control over the administration of its Bank Accounts and to monitor and record the collection and disbursement of funds. The Debtor does not engage in any intercompany transfers.

12.      Among other benefits, the Cash Management System permits the Debtor to accurately monitor cash availability at all times and permits the Debtor to centrally manage and track the collection and transfer of funds, which reduces administrative burden and expense and maximizes interest income.

13.      The Cash Management System consists of the Bank Accounts, which are held at: (i) Eagle Bank and (ii) Morgan Stanley.  Eagle Bank, which is an authorized bank depository by the Office of the United States Trustee for Region 3 (the "***U.S. Trustee***") pursuant to the U.S. Trustee's Operating Guidelines for Chapter 11 Cases (the "***UST Operating Guidelines***"). Although Morgan Stanley is not identified as an authorized depository, it is a highly-rated financial institution that is well-capitalized and financially stable.

D.      **THE DEBTOR'S BUSINESS FORMS.**

14.      In addition to the Cash Management System and Bank Accounts, the Debtor uses in the ordinary course of business numerous business forms (including but not limited to checks, deposit slips, letterhead, contracts, purchase orders and invoices) (collectively, the "***Business Forms***").

15.     Most of the Business Forms are printed on an as-needed basis from an electronic template and therefore, the Debtor intends to designate "Debtor-in-Possession" on such forms. However, with respect to preprinted Business Forms, the Debtor requests that it be authorized to continue to use these preprinted Business Forms on a postpetition basis and once its existing stock is depleted, the Debtor will then replace them with stock containing the "Debtor-in-Possession" designation.  The Debtor submits that it would be expensive and wasteful, and disruptive to the Debtor's business, to destroy all of these forms and order new ones. Absent this relief, the estate will be required to bear a potentially significant expense that the Debtor believes is unwarranted, without any meaningful corresponding benefit, and would unnecessarily distract the Debtor away from its efforts from administering this Chapter 11 Case.

## RELIEF REQUESTED

16.     By this Motion, the Debtor requests entry of interim and final orders, substantially in the forms attached hereto, (i) authorizing, but not directing, the Debtor to continue using its cash management system, existing bank accounts, and business forms and (ii) granting the Debtor a forty-five (45) day-extension to comply with the investment and deposit requirements of section 345(b) of the Bankruptcy Code, if applicable, or file a motion seeking an additional extension or waiver of the requirements of section 345(b) of the Bankruptcy Code. For the reasons set forth herein, the Debtor submits that the relief requested is necessary to continue the uninterrupted operations of the Debtor's business and is in the best interest of the Debtor, its estate, creditors, and other parties-in-interest and, therefore, should be granted.

**BASIS FOR RELIEF**

**A.    THE DEBTOR'S CONTINUED USE OF ITS CASH MANAGEMENT SYSTEM, BANK ACCOUNTS, AND BUSINESS FORMS IS ESSENTIAL TO ITS ONGOING BUSINESS AND IS IN THE BEST INTERESTS OF THE DEBTOR'S ESTATE AND CREDITORS.**

17.    Pursuant to sections 105(a) and 363 of the Bankruptcy Code, the Debtor seeks authorization to continue using in the ordinary course of business its Cash Management System and maintain its existing Bank Accounts, consistent with its prepetition business practices and procedures. Moreover, pursuant to Local Rule 2015-2(a), "upon motion of the debtor, the Court may, without notice and hearing, permit the debtor to use its existing bank accounts." DEL. BANKR. L.R. 2015-2(a).

18.    The Debtor seeks interim authority to continue to use its Cash Management System consistent with its prepetition business practices and procedures. The Debtor utilizes the Cash Management System in the ordinary course of its business.  The Cash Management System currently in place enables the Debtor to (a) closely control and monitor corporate funds, (b) ensure cash availability, and (c) reduce administrative expenses by facilitating the efficient movement of funds.  In light of the manner in which the Debtor generates and tracks revenues related to its operations, any disruption in the Debtor's cash management procedures will hamper the Debtor's efforts to preserve and enhance the value of its estates.  Altering the Cash Management System may disrupt (i) payments to key vendors and (ii) the receipt of funds from the Debtor's members. Therefore, it is essential that the Debtor be permitted to continue to use its Cash Management System in accordance with its existing cash management procedures.

19.    The Debtor submits that the use of the Cash Management System is in the ordinary course of its business.  The Debtor also seeks authority to implement ordinary course changes to its Cash Management System in the event that the Debtor determines, in its reasonable business

judgment, that changes in the Cash Management System would be beneficial to its operations.  To the extent that use of the Cash Management System is beyond the ordinary course of the Debtor's business, such use is nonetheless permitted by sections 363(b)(1) and 105(a).  Section 363(b)(1) of the Bankruptcy Code provides, in part, that "[t]he trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1).  Additionally, section 105(a) empowers the Court to "issue any order, process, or judgment that is necessary to carry out the provisions of this title." 11 U.S.C. § 105(a).

20.    The Debtor respectfully submits that under the circumstances, the maintenance of the Debtor's Cash Management System in substantially the same form as it existed prior to the Petition Date is in the best interests of the Debtor's estate and creditors.  Preserving a "business as usual" atmosphere and avoiding the unnecessary distractions that inevitably would be associated with any substantial changes to the Cash Management System will (a) facilitate the Debtor's stabilization of their postpetition operations and (b) assist the Debtor in its effort to maximize value for its estate.

21.    Except as otherwise provided herein or in the interim or final order, the Debtor will not implement any other changes to its Cash Management System without obtaining prior approval from the Court.

22.    Bankruptcy courts routinely permit chapter 11 debtors to maintain their existing cash management systems, generally treating requests for such relief as a relatively "simple matter." *In re Baldwin-United Corp.*, 79 B.R. 321, 327 (Bankr. S.D. Ohio 1987); *see also In re Columbia Gas Sys.*, 997 F.2d 1039, 1061 (3d Cir. 1993) (recognizing that a requirement to maintain all accounts separately "would be a huge administrative burden and economically inefficient"); *Charter Co. v. Prudential Ins. Co. of Am. (In re Charter Co.)*, 778 F.2d 617, 62 (11th

Cir. 1985) (holding that allowing the Debtor to use its prepetition "routine cash management system" was entirely consistent with applicable provisions of the Bankruptcy Code).

### i.    *Bank Accounts.*

23.     As set forth above, the Debtor currently maintains three (3) Bank Accounts in the ordinary course of its business.  Although the Debtor maintains the Bank Accounts as part of an established cash management system, the UST Operating Guidelines require that the Debtor, as a debtor-in-possession, take certain actions with respect to its prepetition Bank Accounts in order for the U.S. Trustee to supervise the administration of the Debtor's Chapter 11 Case.  As described in the UST Operating Guidelines, the requirements are designed to (i) draw a clear line of demarcation between prepetition and postpetition transactions and operations, and (ii) prevent inadvertent postpetition payment of prepetition claims. The Debtor submits, however, that a waiver of certain requirements is warranted in this Chapter 11 Case.

24.     In order to ensure that the Debtor's members continue timely to pay their dues and vendors continue to provide goods and services to the Debtor, it is critical that the Debtor maintains as much consistency as possible during the early stages of this case in order to avoid serious disruption to its operations.  Changing accounts could significantly and negatively impact Debtor's extremely modest cash flow as it takes a substantial amount of time to open new accounts.

25.     Thus, to minimize disruption to the Debtor's business while in bankruptcy, the Debtor hereby requests that it be permitted to continue to use its Bank Accounts with the same account numbers.  Absent this relief, the UST Operating Guidelines would require the Debtor to close its prepetition Bank Accounts and open new accounts, which will disrupt the Debtor's ability to receive funds from its over one thousand (1,000) members and disrupt the Debtor's relationships with employees and suppliers, all of whom are accustomed to working with the current Cash

Management System.  Allowing the Debtor to continue to use its prepetition Bank Accounts will assist the Debtor in accomplishing a smooth transition to operating in Chapter 11.

26.     The Bank Accounts are with (i) Eagle Bank and (ii) Morgan Stanley, financially stable banking institutions insured by the FDIC.  To protect against the unauthorized payment of prepetition obligations, the Debtor represents that if they are authorized to continue to use the Bank Accounts, the Banks will be directed not to pay any debts incurred before the Petition Date, other than as authorized by this Court.  In the event that there are funds currently in an account at a bank other the Banks (which the Debtor does not believe to be the case), the Debtor will direct such bank not to pay any debts incurred before the Petition Date, other than as authorized by this Court.

27.     Authority to continue the use of bank accounts has been granted in other chapter 11 cases in this District. *See*, *e.g.*, *In re ATD Corp.*, Case No. 18-12221 (KJC) (Bankr. D. Del. Oct. 5, 2018) [Docket No. 101] (order authorizing continued use of cash management system); *In re Welded Construction, L.P.*, Case No. 18-12378 (KG) (Bankr. D. Del. Oct. 23, 2018) [Docket No. 37] (same); *In re Brookstone Holdings Corp.*, Case No. 18-11780 (BLS) (Bankr. D. Del. Aug. 3, 2018) [Docket No. 66] (same); *In re ONE Aviation Corp.*, Case No. 18-12309 (CSS) (Bankr. D. Del. Oct. 11, 2018) [Docket No. 42] (same); *In re Southeastern Grocers, LLC*, Case No. 18-10700 (MFW) (Bankr. D. Del. Mar. 28, 2018) [Docket No. 109) (same); *In re Open Roads Films*, Case No. 18-12012 (LSS) (Bankr. D. Del. Sept. 7, 2018) [Docket No. 43] (same).[2]

---

[2]    The referenced orders are voluminous in nature and are not attached to this Motion; however, in light of the requirements of Local Rule 7007-2, as made applicable to main cases by the Court's General Chambers Procedures, undersigned counsel has retained copies of each order, and will make them available to the Court or to any party that requests them.  Additionally, the Orders are available on the Court's CM/ECF PACER site at the cited docket index numbers and on the dates specified above.

28.     In addition, the Debtor requests authority to open and close bank accounts.  The Debtor requests that the Banks and any other bank be authorized to honor the Debtor's request to open or close any bank accounts; *provided*, *however*, any new account that the Debtor opens will be with a bank that is organized under the laws of the United States of America or any state, and that is insured by FDIC.  Additionally, the Debtor will provide the U.S. Trustee with notice of any new accounts that are opened.

29.     Further, the Debtor requests that the Banks be permitted to debit the Debtor's accounts in the ordinary course of business without the need for further order of this Court for (a) all checks drawn on the Bank Accounts which are cashed at the Banks' counters or exchanged for cashier's checks by the payees prior to the Petition Date, and (b) all undisputed prepetition amounts outstanding as of the Petition Date, if any, owed to the Bank as service charges for the maintenance of the Debtor's Cash Management System.  The Debtor further requests that the Banks be restrained from honoring any check, draft, wire, or electronic funds transfer presented, issued, or drawn on the Bank Accounts on account of a prepetition claim unless (a) authorized in an order of this Court, (b) not otherwise prohibited by a "stop payment" request received by the Bank from the Debtor, and (c) supported by sufficient funds in the Bank Account in question.

30.     Both as part of this Motion and in other motions that have been concurrently filed, the Debtor is requesting authority to pay, in its sole discretion, certain prepetition obligations. With respect to certain debt, the Debtor's issued checks prior to the Petition Date that have yet to clear the banking system.  In other instances, the Debtor will write the relevant check or issue a wire transfer once the Court enters an order permitting the Debtor to do so.  The Debtor intends to inform the Banks which checks should be so honored.  Therefore, the Debtor requests that the Banks be authorized and directed to rely on the representations of the Debtor with respect to

whether any check or other payment order drawn or issued by the Debtor prior to the Petition Date should be honored. The Debtor further requests that any order entered with respect to this Motion specify that the Banks shall not have any liability to any party for relying on such representations. This relief is reasonable and appropriate because the Banks are not in a position to independently verify or audit whether a particular prepetition check may be honored in accordance with an order by the Court or otherwise.

### ii.    Business Forms.

31.    In the ordinary course of business, the Debtor issues checks but also makes payments through ACH Transfers and electronic fillable checks. The majority of the Debtor's Bank Accounts are managed electronically. Nevertheless, the Debtor may use limited preprinted letterhead and related form documents (the "***Preprinted Forms***"). By virtue of the nature and scope of the Debtor's business operations and the number of members and suppliers of goods and services with whom the Debtor deals on a regular basis, it is important that the Debtor be permitted to continue to use the Preprinted Forms without alteration or change and without the "Debtor-in-Possession" designation. Otherwise, the estate will be required to bear a potentially significant expense, which the Debtor respectfully submits is unwarranted. Once such Preprinted Forms are depleted, the Debtor will then seek to replace them with forms containing the "Debtor-in-Possession" designation.

32.    As parties that presently conduct business with the Debtor will likely be aware of the Debtor's status as debtor-in-possession, the alteration of the Debtor's Preprinted Forms would be unnecessary and unduly burdensome. Further, this Court has allowed debtors to use their prepetition business and check forms without the "Debtor-in-Possession" label in other large cases. *See, e.g.*, Cases Cited, *supra*, ¶ 27 (authorizing debtors to use their present forms, including

preprinted checks, without reference to their status as debtor-in-possession, provided, however, that the debtors would start imprinting the legend "DIP" thereon following depletion of their preprinted forms).

**B.     THE COURT SHOULD AUTHORIZE BANKS PARTICIPATING IN THE CASH MANAGEMENT SYSTEM TO HONOR CERTAIN TRANSFERS, CHARGE BANK FEES AND CERTAIN OTHER AMOUNTS.**

33.     Prior to the Petition Date, the Debtor issued checks that have yet to clear the banking system and, but for the entry of an Order of the Bankruptcy Court, such checks would not clear.  With respect to other obligations, the Debtor intends to issue checks postpetition on account of such prepetition obligations once the Court enters an order permitting the Debtor to take such action.  The Debtor intends to inform its Banks regarding which prepetition checks should be honored as permitted by orders of the Court authorizing such payments.

34.     As a result of the foregoing, the Debtor requests the Banks be authorized and directed to accept and honor all representations from the Debtor as to which checks, drafts, wires or ACH transfers should be honored or dishonored consistent with any order of this Court and governing law, whether such checks, drafts, wires or ACH transfers are dated prior to, on or subsequent to the Petition Date. The Debtor requests that the Banks not be liable to any party, including any trustee appointed in the case, on account of: (a) following the Debtor's instructions or representations as to any order of this Court; (b) the honoring of any prepetition check or item in a good-faith belief that the Court has authorized such prepetition check or item to be honored; or (c) an innocent mistake made despite implementation of reasonable item-handling procedures. Such relief is reasonable and appropriate because the Banks are not in a position to independently verify or audit whether a particular item may be paid in accordance with a Court order or otherwise.

35.     Finally, the Debtor requests authority for the Banks to charge, and the Debtor to pay or honor, both prepetition and post-petition service and other fees, costs, charges and expenses

to which the Banks may be entitled under the terms of and in accordance with its contractual arrangements with the Debtor (collectively, the "***Bank Fees***"). The Debtor also requests the Banks be authorized to charge back returned items to the Bank Accounts in the normal course of business.

36.    The Debtor requires this relief to minimize the disruption of the Cash Management System and its Bank Accounts, and to assist them in accomplishing a smooth transition to operating in Chapter 11.  Authority for Debtor to pay Bank Fees and banks to charge back returned items has been routinely granted in other chapter 11 cases. *See, e.g.*, Cases Cited, *supra*, ¶ 28.

## C.    THE DEBTOR SHOULD BE ALLOWED FORTY-FIVE (45) DAYS TO COMPLY WITH THE REQUIREMENTS OF SECTION 345(B) OF THE BANKRUPTCY CODE.

37.    The UST Operating Guidelines generally require chapter 11 debtors to, among other things, deposit all estate funds into an account with an authorized depository that agrees to comply with the requirements of the U.S. Trustee's office.  The Debtor maintains Bank Accounts at the Banks.

38.    As described above, the Debtor's Cash Management System is critical to the ongoing stability of the Debtor's business and transition into chapter 11.  Requiring the Debtor to transfer the Bank Accounts to a designated authorized depository would place a needless administrative burden on the Debtor that would unnecessarily divert the attention of the Debtor's management at a critical junction in this Chapter 11 Case.

39.    In addition, strict compliance with the requirements of section 345(b) of the Bankruptcy Code would, in cases such as this, be inconsistent with section 345(a), which permits a debtor in possession to make such investments of money of the estate "as will yield the maximum reasonable net return on such money."  Thus, in 1994, to avoid "needlessly handcuff[ing] larger, more sophisticated debtors," Congress amended section 345(b) of the Bankruptcy Code to provide

that its strict investment requirements may be waived or modified if the Court so orders "for cause." 140 Cong. Rec. H. 10,767 (Oct. 4, 1994), 1994 WL 54773.

40.     Here, the Bank Accounts are held at well-capitalized and financially-stable institutions insured by the FDIC.  Thus, the Debtor believes that any funds that are deposited in the Bank Accounts are secure.  Moreover, the Cash Management System reflects a disciplined and prudent strategy, permitting the Debtor to balance the need to maximize returns on excess cash while ensuring that such excess cash is readily available for use in the Debtor's business operations.  Requiring the Debtor to bond the Bank Accounts, as contemplated by section 345(b) of the Bankruptcy Code (unless the Court orders otherwise), would impose considerable costs on the Debtor and its estate and would hamper the Debtor's already pressed liquidity needs.

41.     For the foregoing reasons, the Debtor requests a forty-five (45) day extension set to comply with the UST Operating Guidelines and section 345(b) of the Bankruptcy Code, seek a waiver of the UST Operating Guidelines and section 345(b) requirements, or make other acceptable arrangements, subject to this Court's approval.

## D.     INTERIM APPROVAL SHOULD BE GRANTED AND A FINAL HEARING SHOULD BE SCHEDULED.

42.     The Debtor requests that the Court conduct a preliminary hearing on the Motion and, on an interim basis, grant the relief requested herein.  In addition, the Debtor respectfully requests that the Court schedule a final hearing on this Motion at the Court's convenience following entry of an interim order. Such relief is necessary in order to maintain and preserve the ongoing operations of the Debtor.

## E.     THE DEBTOR SATISFIES BANKRUPTCY RULE 6003.

43.     Bankruptcy Rule 6003 provides that to the extent "relief is necessary to avoid immediate and irreparable harm" a Bankruptcy Court may approve a motion to "pay all or part of

a claim that arose before the filing of the petition" prior to twenty-one days after the Petition Date. As described above and in the First Day Declaration, the Debtor's business operations rely heavily on their efficient and uninterrupted Cash Management System. Accordingly, the Debtor submits that the relief requested herein is necessary to avoid immediate and irreparable harm and, therefore, the requirements of Bankruptcy Rule 6003 for expedited relief are satisfied.

## REQUEST FOR IMMEDIATE RELIEF AND WAIVER OF STAY

44.     In addition, by this Motion, the Debtor seeks a waiver of any stay of the effectiveness of the order approving this Motion. Pursuant to Bankruptcy Rule 6004(h), "[a]n order authorizing the use, sale, or lease of property other than cash collateral is stayed until the expiration of fourteen (14) days after entry of the order, unless the court orders otherwise." Fed. R. Bankr. P. 6004(h). As set forth above, the Debtor requires immediate relief to continue ordinary business operations for the benefit of all parties-in-interest. Accordingly, the Debtor submits that ample cause exists to justify a waiver of the 14-day stay imposed by Bankruptcy Rule 6004(h), to the extent that it applies.

## NOTICE

45.     Notice of this Motion shall be provided to: (a) the Office of the United States Trustee for the District of Delaware; (b) the Debtor's twenty (20) largest unsecured creditors as identified on the voluntary petition; (c) the United States Attorney's Office for the District of Delaware, and (d) the Banks. As this Motion is seeking "first-day" relief, notice of this Motion and any order entered hereon will be served on all parties required by Local Rule 9013-1(m). Due to the urgency of the circumstances surrounding this Motion and the nature of the relief herein, the Debtor respectfully submits that no further notice of this Motion is required.

**WHEREFORE**, the Debtor respectfully requests that the Court (i) enter the interim order, substantially in the form attached hereto as **Exhibit A** granting the relief requested herein, (ii) schedule a final hearing on the Motion and thereafter enter the final order substantially in the form attached hereto as **Exhibit B**, and (iii) grant such other and further relief as the Court may deem proper.

Dated: August 19, 2019
      Wilmington, Delaware

CHIPMAN BROWN CICERO & COLE, LLP


/s/ Mark L. Desgrosseilliers

Mark L. Desgrosseilliers (No. 4083)
Hercules Plaza
1313 North Market Street, Suite 5400
Wilmington, Delaware 19801
Telephone:    (302) 295-0192
Facsimile:    (302) 295-0199
Email:       desgross@chipmanbrown.com

     and

**Squire Patton Boggs (US) LLP**
Mark A. Salzberg (*pro hac vice* pending)
Christopher J. Giaimo (*pro hac vice* pending)
Jeffrey N. Rothleder (*pro hac vice* pending)
2550 M Street, NW
Washington, DC 20037
Telephone:    202-457-6000
Facsimile:    202-457-6315
Email:       mark.salzberg@squirepb.com
               christopher.giaimo@squirepb.com
               jeffrey.rothleder@squirepb.com

*Proposed Counsel to the Debtor and Debtor-in-Possession*

## Schedule 1

| BANK NAME | ACCOUNT TYPE | ACCOUNT NUMBER (Last 4) |
|---|---|---|
| Eagle Bank | Checking | 0034 |
| Morgan Stanley | Investment | 4003 |
| Morgan Stanley | Investment | 9003 |

# **EXHIBIT A**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| NATIONAL PRODUCT ASSOCIATION,[1] | Case No. 19-11849 |
| Debtor. | Related Docket No. _____ |

### *INTERIM* ORDER (I) AUTHORIZING THE DEBTOR TO (A) CONTINUE THE USE OF THE DEBTOR'S CASH MANAGEMENT SYSTEM AND (B) EXTENDING THE TIME TO COMPLY WITH THE REQUIREMENTS OF SECTION 345(b) OF THE BANKRUPTCY CODE

Upon the motion (the "***Motion***")[2] of the above-captioned debtor and debtor-in-possession (the "***Debtor***") for entry of interim and final orders, pursuant to sections 105(a), 363(b)(1), 507(a), 541, 1107, and 1108 of the Bankruptcy Code, Bankruptcy Rules 6003 and 6004, and Local Rules 2015-2 and 9013-1(m), authorizing the Debtor to continue using its Cash Management System, existing Bank Accounts, and Business Forms and upon consideration of the Motion and First Day Declaration; the Court having found that (i) the Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012, (ii) venue is proper in this district pursuant to 28 U.S.C. § 1409, (iii) this is a core proceeding pursuant to 28 U.S.C. § 157(b), and (iv) notice of the Motion was sufficient under the circumstances and no other or further notice need to be provided; the Court having reviewed the Motion and the First Day Declaration and having considered the statements of counsel and the evidence adduced with respect to the Motion at the hearing; after due deliberation, the Court having determined that the relief requested in the Motion

---

[1] The Debtor in this case, along with the last four digits of the federal tax identification number, is National Product Association (6719).  The Debtor's headquarters are located at 440 1st Street N.W., Suite 520, Washington, DC 20001.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Motion.

is in the best interests of the Debtor, its estate, its creditors, and all other parties interested in this case; and good and sufficient cause having been shown,

**IT IS HEREBY ORDERED THAT:**

1.        The Motion is GRANTED on an interim basis as set forth herein.

2.        The Debtor is authorized to continue to use its existing Cash Management System. In connection with the ongoing utilization of its Cash Management System, the Debtor shall continue to maintain records with respect to all transfers of cash so that all transactions may be readily ascertained, traced, and recorded properly and distinguished between prepetition and postpetition transactions.

3.        For Banks at which the Debtor holds Bank Accounts that are party to a Uniform Depository Agreement with the Office of the United States Trustee for the District of Delaware, within fifteen (15) days of the date of entry of this Order the Debtor shall (a) contact each bank, (b) provide the bank with the Debtor's employer identification number, and (c) identify each of its Bank Accounts held at such Banks as being held by debtor-in-possession in a bankruptcy case. The Debtor is authorized to open any new bank accounts or close any existing Bank Accounts as it may deem necessary and appropriate in its business judgement; *provided*, *however*, that the Debtor gives notice within fifteen (15) days to the Office of the United States Trustee for the District of Delaware and any statutory committees appointed in this Chapter 11 Case; *provided, further, however*, that the Debtor shall open any such new Bank Account at Banks that are an authorized depository by, and have executed an agreement with, the Office of the United States Trustee for the District of Delaware or at such banks that are willing promptly to execute such an agreement.

4.      The Debtor is authorized, without further order of the Court, to pay to the Banks in the ordinary course of business, any Bank Fees that have accrued or will accrue.

5.      For any banks at which the Debtor holds accounts that are not party to a Uniform Depository agreement with the Office of the United States Trustee for the District of Delaware, the Debtor shall use its good-faith efforts to cause the banks to execute a Uniform Depository agreement in a form prescribed by the Office of the United States Trustee within forty-five (45) days of the date of this Order. The U.S. Trustee's rights to seek further relief from this Court on notice in the event that the aforementioned banks are unwilling to execute a Uniform Depository Agreement in a form prescribed by the U.S. Trustee are fully reserved.

6.      The Debtor is authorized to continue to use its existing preprinted checks and Business Forms, to the extent such exist, without alteration; provided that once the Debtor's existing checks have been used, the Debtor shall, when reordering checks, require the designation "Debtor-in-Possession" and the corresponding bankruptcy case number on all checks; provided further that, with respect to checks and Business Forms that the Debtor or its agents print themselves, the Debtor shall begin printing the "Debtor-in-Possession" legend and the bankruptcy case number on such items within ten (10) days of the date of entry of this Order.

7.      The Banks are authorized to debit the Debtor's Bank Accounts in the ordinary course of business without need for further order of this Court for (i) all checks, items, and other payment orders drawn on the Debtor's Bank Accounts that are cashed at the Bank's counters or exchanged for cashier's checks by the payees thereof prior to the Bank's receipt of notice of the commencement of this Chapter 11 Case, (ii) all checks, automated clearing house entries, and other items deposited or credited to one of the Debtor's Bank Accounts with the Banks prior to the commencement of this Chapter 11 Case that have been dishonored, reversed, or returned unpaid for any reason, together

with any related fees and costs in connection therewith, to the same extent the Debtor was responsible

for such items prior to the commencement of this Chapter 11 Case, and (iii) all undisputed prepetition

amounts outstanding as of the Petition Date, if any, owed to the Bank as service charges for the

maintenance of the Cash Management System.

8.      The Banks may rely on the representations of the Debtor with respect to whether any

check, item, or other payment order drawn or issued by the Debtor prior to the commencement of

this Chapter 11 Case that should be honored pursuant to this or any other order of this Court, and

such Bank shall not have any liability to any party, including any trustee appointed in these cases,

for relying on such representations by the Debtor as provided for herein.

9.      The Debtor is authorized to deposit and invest its cash and cash equivalents in the

Bank Accounts consistent with its prepetition practices and the Cash Management System.  As to

Banks that are not party to a uniform depository agreement with the United States Trustee for the

District of Delaware, the requirements of section 345(b) of the Bankruptcy Code are hereby

suspended on an interim basis for forty-five (45) days from the Petition Date.

10.     Solely with respect to any Bank Accounts that may have inadvertently omitted from

disclosure in the Motion, the Debtor is hereby granted a forty-five (45) day extension from the

Petition Date to comply with the deposit and investment requirements under section 345(b) of the

Bankruptcy Code or file a motion for additional time to comply or a further interim suspension of

the requirements under section 345(b) of the Bankruptcy Code.

11.     The Debtor is hereby authorized to execute any additional documents and cooperate

with the Banks as may be required to carry out the intent and purpose of this Order.

12.     A final hearing (the "**Final Hearing**") on the full relief requested in the Motion

shall be held on _____, 2019 at _____:_____ ___.m.  (*prevailing*  Eastern

Time). Any objections or responses to entry of a final order on the Motion (each, an "**Objection**") shall be filed on or before 4:00 p.m. *prevailing* Eastern Time on _____

_____, 2019, and served on the following parties: (a) the Debtor, National Product Association, 440 1st Street NW, Washington, DC 20001 (*Attn*: Daniel Fabricant, Ph.D., President and Chief Executive Officer); (b) *proposed* counsel for the Debtor, (i) Squire Patton Boggs (US) LLP, 2550 M Street, NW, Washington, DC 20037 (*Attn*: Christopher J. Giaimo, Esquire and Mark A. Salzberg, Esquire); and (ii) Chipman Brown Cicero & Cole, LLP, Hercules Plaza, 1313 North Market Street, Suite 5400, Wilmington, Delaware 19801 (*Attn:* Mark L. Desgrosseilliers, Esquire); (c) the Office of the United States Trustee, J. Caleb Boggs Federal Building, 844 King Street, Lockbox 35, Wilmington, Delaware 19801 (*Attn*: Richard L. Schepacarter, Esquire); and (d) counsel to any official committee of unsecured creditors appointed in this case. In the event no Objections to entry of a final order on the Motion are timely received, this Court may enter such final order without need for the Final Hearing.

13.     The requirements set forth in Bankruptcy Rules 6003(b) and 6004(a) are satisfied by the contents of the Motion.

14.     Pursuant to Rule 6004(h) of the Federal Rules of Bankruptcy Procedure, this Interim Order shall be immediately effective and enforceable upon its entry.

15.     The Debtor is authorized and empowered to take all actions necessary to implement the relief granted in this Order.

16.     The Court shall retain jurisdiction over any and all matters arising from the interpretation or implementation of this Order.

# **<u>EXHIBIT B</u>**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| NATIONAL PRODUCT ASSOCIATION,[1] | Case No. 19-11849 |
| Debtor. | Related Docket No. _____ |

***FINAL* ORDER (I) AUTHORIZING THE DEBTOR TO (A) CONTINUE
THE USE OF THE DEBTOR'S CASH MANAGEMENT SYSTEM
AND (B) EXTENDING THE TIME TO COMPLY WITH THE
<u>REQUIREMENTS OF SECTION 345(b) OF THE BANKRUPTCY CODE</u>**

Upon the motion (the "**Motion**")[2] of the above-captioned debtor and debtor-in-possession

(the "**Debtor**") for entry of interim and final orders, pursuant to sections 105(a), 363(b)(1), 507(a),

541, 1107, and 1108 of the Bankruptcy Code, Bankruptcy Rules 6003 and 6004, and Local Rules

2015-2 and 9013-1(m), authorizing the Debtor to continue using its Cash Management System,

existing Bank Accounts, and Business Forms and upon consideration of the Motion and First Day

Declaration; the Court having found that (i) the Court has jurisdiction over this matter pursuant to

28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States

District Court for the District of Delaware, dated February 29, 2012, (ii) venue is proper in this

district pursuant to 28 U.S.C. § 1409, (iii) this is a core proceeding pursuant to 28 U.S.C. § 157(b),

and (iv) notice of the Motion was sufficient under the circumstances and no other or further notice

need to be provided; the Court having reviewed the Motion and the First Day Declaration and

having considered the statements of counsel and the evidence adduced with respect to the Motion

at the hearing; after due deliberation, the Court having determined that the relief requested in the

---

[1]  The Debtor in this case, along with the last four digits of the federal tax identification number, is National Product Association (6719).  The Debtor's headquarters are located at 440 1st Street N.W., Suite 520, Washington, DC 20001.

[2]  Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Motion.

Motion is in the best interests of the Debtor, its estate, its creditors, and all other parties interested in this case; and good and sufficient cause having been shown,

**IT IS HEREBY ORDERED THAT:**

1.      The Motion is GRANTED on a final basis as set forth herein.

2.      The Debtor is authorized to continue to use its existing Cash Management System. In connection with the ongoing utilization of its Cash Management System, the Debtor shall continue to maintain records with respect to all transfers of cash so that all transactions may be readily ascertained, traced, and recorded properly and distinguished between prepetition and postpetition transactions.

3.      For Banks at which the Debtor holds Bank Accounts that are party to a Uniform Depository Agreement with the Office of the United States Trustee for the District of Delaware, within fifteen (15) days of the date of entry of this Order the Debtor shall (a) contact each bank, (b) provide the bank with the Debtor's employer identification number and (c) identify each of its Bank Accounts held at such Banks as being held by debtor-in-possession in a bankruptcy case.   The Debtor is authorized to open any new bank accounts or close any existing Bank Accounts as it may deem necessary and appropriate in its business judgment; provided, however, that the Debtor gives notice within fifteen (15) days to the Office of the United States Trustee for the District of Delaware and any statutory committees appointed in this Chapter 11 Case; provided, further, however that the Debtor shall open any such new Bank Account at Banks that have executed a Uniform Depository Agreement with the Office of the United States Trustee for the District of Delaware, or at such Banks that are willing to immediately execute such an agreement.

4.      The Debtor is authorized, without further order of the Court, to pay to the Banks in the ordinary course of business, any Bank Fees that have accrued or will accrue.

5.      To the extent the Debtor opens or closes Bank Accounts, the Debtor shall provide notice to the United States Trustee, any statutory committee appointed in this case and the postpetition lender.

6.      The Debtor is authorized to continue to use its existing preprinted checks and Business Forms without alteration; provided that once the Debtor's existing checks have been used, the Debtor shall, when reordering checks, require the designation "Debtor-in-Possession" and the corresponding bankruptcy case number on all checks; provided further that, with respect to checks and Business Forms that the Debtor or its agents print themselves, the Debtor shall begin printing the "Debtor-in-Possession" legend and the bankruptcy case number on such items within ten (10) days of the date of entry of this Order.

7.      The Banks are authorized to debit the Debtor's Bank Accounts in the ordinary course of business without need for further order of this Court for (i) all checks, items, and other payment orders drawn on the Debtor's Bank Accounts that are cashed at the Bank's counters or exchanged for cashier's checks by the payees prior to the Bank's receipt of notice of the commencement of this Chapter 11 Case, (ii) all checks, automated clearing house entries, and other items deposited or credited to one of the Debtor's Bank Accounts with such Banks prior the commencement of this Chapter 11 Case that have been dishonored, reversed, or returned unpaid for any reason, together with any related fees and costs in connection therewith, to the same extent the Debtor was responsible for such items prior to the commencement of this Chapter 11 Case, and (iii) all undisputed prepetition amounts outstanding as of the Petition Date, if any, owed to the Bank as service charges for the maintenance of the Cash Management System.

8.      The Bank may rely on the representations of the Debtor with respect to whether any check, item, or other payment order drawn or issued by the Debtor prior to the commencement

of this Chapter 11 Case that should be honored pursuant to this or any other order of this Court, and such Bank shall not have any liability to any party, including any trustee appointed in this case, for relying on such representations by the Debtor as provided for herein.

9.      The Debtor is authorized to deposit funds in accordance with the Debtor's established deposit practices and guidelines in effect as of the commencement of this case and, to the extent that such deposit practices and guidelines are not consistent with the requirements of section 345(b) of the Bankruptcy Code.

10.      Solely with respect to any Bank Accounts that may have been inadvertently omitted from disclosure in the Motion, the Debtor is hereby granted a forty-five (45) day extension from the Petition Date to comply with the deposit and investment requirements under section 345(b) of the Bankruptcy Code or file a motion for additional time to comply or a waiver of the requirements under section 345(b) of the Bankruptcy Code.

10.      The Debtor shall maintain detailed and accurate records of all transfers so that all transactions may be readily ascertained, traced, recorded properly and distinguished between prepetition and postpetition transactions.

11.      Notwithstanding anything to the contrary contained in this Order, any payment made or to be made under this Order, any authorization contained in this Order, or any claim for which payment is authorized by this Order, shall be subject to the requirements imposed on the Debtor under any orders of this Court approving any debtor-in-possession financing or any use of cash collateral by the Debtor and any approved budget (subject to permitted variances thereto) in connection therewith.

12.      The Debtor is hereby authorized to execute any additional documents and cooperate with the Banks as may be required to carry out the intent and purpose of this Order.

13.     The Debtor shall serve a copy of this Order on the Banks within five (5) business days of the entry of this order, or immediately upon the opening of a new bank account.

14.     Pursuant to Rule 6004(h) of the Federal Rules of Bankruptcy Procedure, this Order shall be immediately effective and enforceable upon its entry, and shall be deemed to be a final Order.

15.     The Debtor is authorized and empowered to take all actions necessary to implement the relief granted in this Order.

16.     The Court shall retain jurisdiction over any and all matters arising from the interpretation or implementation of this Order.