**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| NATIONAL PRODUCT ASSOCIATION,[1] | Case No. 19-11849 |
| Debtor. | |

**DEBTOR'S MOTION FOR ENTRY OF INTERIM
AND FINAL ORDERS (I) AUTHORIZING THE DEBTOR TO
(A) PAY CERTAIN PREPETITION WAGES, SALARIES, BENEFITS, AND
OTHER COMPENSATION AND (B) MAINTAIN EMPLOYEE BENEFIT PROGRAMS
AND PAY RELATED OBLIGATIONS, AND (II) GRANTING RELATED RELIEF**

Natural Product Association (the "***Debtor***"), by and through its undersigned proposed counsel, submits this motion (the "***Motion***"), pursuant to sections 105(a), 363(b)(1), 507(a), 541, 1107 and 1108 of Title 11 of the United States Code (the "***Bankruptcy Code***"), Rules 6003 and 6004 of the Federal Rules of Bankruptcy Procedure (the "***Bankruptcy Rules***"), and Rule 9013-1(m) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "***Local Rules***"), for entry of interim and final orders, substantially in the forms attached hereto as Exhibit A (the "***Interim Order***") and Exhibit B (the "***Final Order***," together with the Interim Order, the "***Proposed Orders***"), (i) authorizing the Debtor to (a) pay certain prepetition wages, benefits and other compensation (collectively, the "***Prepetition Employee Obligations***"), and (b) continue employee compensation and employee benefit programs (collectively, the "***Employee Benefit Programs***"), and (ii) granting related relief. In support of the Motion, the Debtor relies upon and incorporates herein by reference, as if set forth in full herein, the *Declaration of Daniel Fabricant, Ph.D. in Support of Chapter 11 Filing*

---

[1]  The Debtor in this case, along with the last four digits of the federal tax identification number, is National Product Association (6719).  The Debtor's headquarters are located at 440 1st Street N.W., Suite 520, Washington, DC 20001.

*and First Day Motions* (the "***First Day Declaration***"), filed with this Court concurrently with this Motion.  In support hereof, the Debtor respectfully states as follows:

## JURISDICTION AND VENUE

1.     The Court has jurisdiction over the Debtor, its estate, and this matter under 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012.

2.     This matter is a core proceeding under 28 U.S.C. § 157(b)(2).  Pursuant to Local Rule 9013-1(f), the Debtor consents to the entry of a final order by this Court in connection with this Motion, to the extent it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

3.     Venue is proper in this district under 28 U.S.C. §§ 1408 and 1409.

4.     The statutory predicates for the relief requested in this Motion are sections 105(a), 363(b)(1), 507(a), 541, 1107 and 1108 of the Bankruptcy Code.  The relief is also appropriate under Bankruptcy Rules 6003 and 6004 and Local Rule 9013-1(m).

## BACKGROUND

5.     On the date hereof (the "***Petition Date***"), the Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Court in the United States Bankruptcy Court for the District of Delaware (the "***Court***"), thereby commencing this case (the "***Chapter 11 Case***").

6.     The Debtor remains in possession of its property, operates its business and manages its property as a debtor-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

7.     No trustee, examiner or official committee of unsecured creditors has been appointed in the Chapter 11 Case.

8.     Additional factual background regarding the Debtor, including its business operations, its capital and debt structures, and the events leading to the commencement of the Chapter 11 Case, is set forth in the First Day Declaration, which is fully incorporated herein by reference.

## RELIEF REQUESTED

9.     By this Motion, the Debtor requests entry of the Proposed Orders authorizing the Debtor to (i) pay, in its discretion, all prepetition amounts required or related to the Prepetition Employee Obligations and Employee Benefits Programs (each as defined below and together with all fees, costs, and expenses incident thereto, including amounts owed to third-party administrators, the "*Employee Obligations*"); and (ii) maintain, and continue honoring and paying, in its discretion, all amounts with respect to the Employee Obligations as such were in effect as of the commencement of this Chapter 11 Case and as such may be modified, amended, or supplemented from time to time in the ordinary course of business, including amounts owed to third-party administrators.

10.    To enable the Debtor to carry out the relief requested, the Debtor also requests that the Court authorize all applicable financial institutions and banks (the "*Banks*"), and Paychex (the "*Payroll Processor*") to receive, process, honor, and pay all checks presented for payment and all electronic payment requests made by the Debtor relating to the Employee Obligations, whether such checks were presented or electronic-payment requests were submitted prior to or after the date hereof.

## THE DEBTOR'S EMPLOYEE OBLIGATIONS

**A.    THE DEBTOR'S WORKFORCE.**

11.    The Debtor is the nation's largest and oldest nonprofit organization dedicated to the natural products industry.  Natural products are represented by a wide array of consumer goods that grow in popularity each year.  These products include natural and organic foods, dietary supplements, probiotics, sports nutrition, medical/functional foods, personal care/cosmetics, homeopathics, "green" cleaning supplies, and pet products.

12.    As of the Petition Date, the Debtor employs six (6) employees (the "***Permanent Employees***"), all of whom are salaried employees.  The Debtor supplements its workforce with individuals hired through outside agencies (collectively, the "***Supplemental Employees***," together with the Supplemental Employees, the "***Employees***").  The Employees and Supplemental Employees perform a variety of critical functions in connection with the Debtor's operations.  The Debtor's Employees are located in Washington, DC.  None of the Debtor's Employees are represented by a union.

**B.    PREPETITION EMPLOYEE OBLIGATIONS.**

13.    The following summarizes the various types of Prepetition Employee Obligations offered by the Debtor:

   *a.    Wages*

14.    In the ordinary course of business, the Debtor pays its Employees wage and salary obligations (collectively, the "***Wages***") on a salaried basis.  All of the Employees receive their wages, salaries, and other compensation by direct deposit.  Employees are paid in arrears on the 15th and last days of the month[2]  for all time worked in the preceding period.

---

[2]    If the 15th or last day of the month falls on a Saturday, Sunday or holiday, the employees are paid on the preceding business day.

15.     Payroll is funded to the Payroll Processor two business days before the date of payment.  As of the Petition Date, the Debtor estimates it owes Employees approximately Seven Thousand Dollars ($7,000.00) on account of accrued but unpaid Wages, all of which will become due and owing within the first twenty-one (21) days of this Chapter 11 Case (collectively, the "***Unpaid Wages***").  The Debtor believes that, as of the Petition Date, no Employee is owed Unpaid Wages in excess of the cap under section 507(a)(4) of the Bankruptcy Code.

     *b.*    *Reimbursable Expenses*

16.     Prior to the Petition Date and in the ordinary course of business, the Debtor reimbursed certain Employees for certain allowed business and travel-related expenses incurred on behalf of the Debtor (the "***Reimbursable Expenses***").  Employees pay for such expenses directly from their own funds and are reimbursed upon the submission of an expense reimbursement form itemizing the applicable business expenses.  Reimbursement is contingent on the Debtor's determination that the charges are for legitimate, reimbursable business expenses.

17.     Reimbursable Expenses approximate to Three Hundred Dollars ($300.00) per month.  As of the Petition Date, the Debtor estimates that it owes approximately Eighty-Eight Dollars ($88.00) in outstanding prepetition Reimbursable Expenses.  The Debtor's incurrence of Reimbursable Expenses varies from month-to-month.  As a result, the Debtor cannot accurately estimate prepetition, unpaid Reimbursable Expenses.

18.     Employees incurred the Reimbursable Expenses as business expenses on the Debtor's behalf and with the understanding that they would be reimbursed.  To avoid harming Employees who incurred the Reimbursable Expenses, the Debtor requests authority to (a) continue paying the Reimbursable Expenses in accordance with prepetition practices, including payment to and in adherence with the Debtor's policy for reimbursing Employees such expenses, and honor

any prepetition obligations related thereto to the extent Employees have paid for such expenses directly from their own funds or are otherwise personally liable for such expenses; (b) modify their prepetition policy relating thereto as they deem appropriate without the need for further court approval; and (c) pay all Reimbursable Expenses to Employees that (i) accrued prepetition and (ii) accrue postpetition but relate to the prepetition period.  The Debtor requests authority to pay up to Three Hundred Dollars ($300.00) on an interim basis and One Thousand Dollars ($1,000.00) on a final basis on behalf of the Reimbursable Expenses.  The Debtor also seeks authority to continue its reimbursement policy in the ordinary course during the administration of the Chapter 11 Case.

   c.    *Holidays/Paid Time-Off and Leaves of Absence*

   19.    The Debtor offers full-time Employees pay for predetermined holidays ("***Paid Holidays***").  In addition, Employees are eligible for paid time away from work based on the employee's length of service.  These absences include personal illness, vacation, preventive care, care for a family member, school activities, medical/dental appointments, personal business and emergencies (collectively, "***Paid Time Off***").  The maximum Paid Time Off an Employee may accrue at any time is ten hours per month if they have been with the Debtor less than two years and 13.33 hours per month if they have been with the Debtor more than two years or serve at a director level.  Employees can accrue a maximum of 240 hours of Paid Time Off.  If an Employee's accrued but unused Paid Time Off reaches the maximum, the Employee will cease to accrue Paid Time Off.  The Debtor anticipates that certain Employees will seek to use or redeem for cash Paid Time Off accrued during the prepetition period after the Petition Date ("***PTO Payouts***").  As of Petition Date, the Debtor estimates that its accrued liability in connection with unused Paid Time Off equaled approximately Seventy Thousand, Two Hundred, Twenty-Eight Dollars and 37/100

($70,228.37).  All of the Paid Time Off is fully-vested and eligible to be redeemed; however, no PTO Payouts will be honored unless required by applicable state law.

20.     The Debtor respectfully requests permission to honor all unused Paid Time Off that accrued prior to the Petition Date, in accordance with its historical practices and in the ordinary course of business.[3]   The Debtor also seeks authority to continue to incur and pay eligible Employees for Paid Holidays consistent with past practices.

### d.     Deductions and Withholdings

21.     During each applicable payroll period, the Debtor routinely deducts certain amounts from its Employees' gross pay, including, without limitation, pre-tax and after-tax deductions payable pursuant to the Employee Benefits Programs discussed herein (*e.g.*, contributions relating to health care benefits and 401(k) and other miscellaneous deductions (collectively, the "***Deductions***").  On a monthly basis, the Debtor deducts and remits to appropriate third-party recipients approximately Twelve Hundred Dollars ($1,200.00) from the Employees' paychecks for the Deductions.  As of the Petition Date, there are no Employee Deductions that have been withheld and not yet remitted to third-party recipients.  Out of an abundance of caution, the Debtor requests authority to remit any unpaid prepetition Deductions that may exist. Additionally, the Debtor seeks authority to continue deducting amounts from the applicable Employee's wages and salaries and forwarding Deductions to the appropriate third-party recipients on a postpetition basis, in the ordinary course of business, and consistent with past practices.  The Deductions represent earnings that applicable authorities have designated for deduction from Employees' paychecks and, thus, may not be property of the Debtor's estate.

---

[3]   In addition, the Debtor also provides all Employees with other leaves of absence as required by law (collectively, the "***Leave of Absence***").  Leaves of Absence include jury duty, voting leave, and bereavement leave.  Employees do not accrue Leaves of Absence over time, and Leaves of Absence are not reflected as a liability on the Debtor's respective balance sheets.

22.     In addition to the Deductions, the Debtor is required by law to withhold amounts related to federal income taxes, as well as Social Security and Medicare taxes for remittance to the appropriate taxing authority (collectively, the "*Withheld Amounts*").  The Debtor is also required to pay additional amounts for federal and state unemployment insurance (together with the Withheld Amounts, the "*Payroll Taxes*").  On a monthly basis, the Debtor remits approximately Nineteen Thousand Dollars ($19,000.00) in Payroll Taxes, which amounts include employer taxes plus what is withheld and remitted on behalf of the Employee.  As of the Petition Date, the Debtor estimates that there are no accrued and unpaid Payroll Taxes (collectively, the "*Unremitted Payroll Taxes*") as those amounts are paid in connection with deductions made by the Payroll Processor.  Because the Deductions and Unremitted Payroll Taxes are not property of the Debtor's estate, the Debtor requests that the Court authorize the Debtor to transmit these amounts, if any, all of which will become due within the first twenty-one (21) days of this Chapter 11 Case, to the appropriate parties in the ordinary course of business.

C.     **EMPLOYEE BENEFITS PROGRAMS.**

23.     In the ordinary course of business, the Debtor offers its full-time Employees the opportunity to participate in a number of health and welfare benefits programs, including medical and dental insurance, life and disability insurance, and other employee benefit plans as described below (collectively, the "*Employee Benefits Programs*").  Maintaining these benefits and honoring obligations thereunder is necessary to preserve employee morale and maintain the stability of the Debtor's workforce during this Chapter 11 Case.

24.     Medical Plan.  The Debtor offers a medical plan to eligible Employees (the "*Medical Plan*"), which is administered by DC Healthlink.  The coverage in the Medical Plans and associated premiums differ depending on the level of coverage Employees elect to receive and

whether the Employee has dependents covered by the applicable plan.  As of the Petition Date, the Debtor estimates that there are no pre-petition premiums outstanding for the Medical Plan as the Debtor paid such premiums on an annual basis several months before the Petition Date.

25.    Dental Plan.  Full-time Employees are eligible to enroll in a dental plan (the "***Dental Plan***") administered by MetLife.  As of the Petition Date, the Debtor estimates that there are no amounts owed to MetLife on account of the Dental Plan.

26.    Company-Paid Plans.  The Debtor provides full-time Employees with a number of company-paid benefits, including Life/AD&D, short term disability, telemedicine, health advocacy, and an employee assistance program (collectively, the "***Company-Paid Plans***").  The Company-Paid Plans are administered by MetLife.  As of the Petition Date, the Debtor estimates that there are no amounts owed to the plan administrators on account of the Company-Paid Plans.

27.    401(k) Plan.  The Debtor maintains for the benefit of eligible Employees an employee savings plan, administered through Principal, which is a tax-qualified plan within the meaning of, and administered in accordance with, the requirements of section 401(k) and other applicable sections of the Internal Revenue Code (the "***401(k) Plan***").  The Debtor does not currently match amounts contributed toward the 401(k) Plan but has in previous years made matching contributions.  There are approximately two participants in the 401(k) Plan.  The Debtor withholds certain amounts from participating Employee's paychecks and contribute such amounts to the 401(k) Plan (the "***Employee 401(k) Contributions***").  The Debtor estimates that it withholds a total of approximately Twelve Hundred Dollars ($1,200.00) in Employee 401(k) Contributions each month.[4]  As of the Petition Date, there are no amounts that have been withheld and not yet

---

[4]    The Debtor's books and records show that is has previously made a matching contribution to the 401(k) Plan in the amount of Twelve Hundred Dollars ($1,200).

remitted to the 401(k) Plan administrator.  The Debtor requests authority to continue the Employee 401(k) Contributions on a postpetition basis.

28.   <u>Other Policies and Benefits</u>.  Eligible Employees have the benefit of certain other policies and benefits, including, but not limited to, jury duty, bereavement leave, voting leave, military duty leave, some of which are mandated or encouraged by law and some of which may have pay or benefits components.  The Debtor seeks authorization to continue the aforementioned Policies and Benefits and to make any payments on account of any accrued but unpaid amounts owing thereunder.

29.   The Debtor requests authority to (a) continue the Employee Benefits Programs in the ordinary course of business, (b) continue making the above-described contributions to the Employee Benefits Programs, and (c) pay any amounts related thereto, including premiums, claims amounts, and administration fees, to the extent that they remain unpaid as of the Petition Date in the ordinary course of business.  Specifically, the Debtor seeks to pay all outstanding amounts, if any, in pre-petition administrative fees, monthly premiums, and funding for Employee Benefits Programs on an interim basis and on a final basis subject to the limits set forth herein.

**D.    PAYROLL PROCESSOR.**

30.   As noted above, the Debtor uses the Payroll Processor to administer payroll funds made available to Employees through direct deposit.  The Payroll Processor's responsibilities include processing payroll and transferring funds from the Debtor to its Employees and to the relevant taxing authorities.  The Debtor pays the Payroll Processor approximately Two Hundred, Eighty Dollars ($280.00) per month.  Because the services provided by the Payroll Processor are crucial to the smooth functioning of the Debtor's payroll system, the Debtor requests permission

to pay any unpaid Payroll Processor fees, and to continue to pay fees that accrue during this bankruptcy case in the ordinary course of business.

## BASIS FOR RELIEF

### Cause Exists to Authorize the Debtor to Pay Prepetition Obligations, Maintain Employee Benefits Programs, and Pay Related Administrative Costs

31.     Pursuant to sections 507(a)(4) and 507(a)(5) of the Bankruptcy Code, an individual's claims for "wages, salaries, or commissions, including vacation, severance, and sick leave pay" earned within 180 days before the Petition Date, and claims against the Debtor for contributions to employee benefit plans arising from services rendered within one hundred eighty (180) days before the Petition Date, are each afforded unsecured priority status up to $12,850.00 per employee.  Furthermore, to the extent any Employee Obligations exceed the cap amounts imposed by sections 507(a)(4) and 507(a)(5) of the Bankruptcy Code, provided such caps apply, such payments would be authorized under sections 105(a) and 363(b)(1) of the Bankruptcy Code, as discussed below.

**A.      THE PROPOSED PAYMENTS ARE ACCORDING PRIORITY UNDER SECTION 507 OF THE BANKRUPTCY CODE.**

32.     The Debtor believes that many of its Employee Obligations constitute priority claims under sections 507(a)(4) and 507(a)(5) of the Bankruptcy Code.  To the extent such Employee Obligations constitute priority claims, the Debtor is required to pay such claims in full to confirm a chapter 11 plan.  *See* 11 U.S.C. § 1129(a)(9)(B).  Thus, granting the relief sought herein would only cause such Employee claims to be paid in the initial stages of this Chapter 11 Case, rather than at the plan confirmation stage, and would be consistent with the Bankruptcy Code's purpose of ensuring that employees are paid in full on account of the priority status of their

claims, up to the statutorily imposed limit.  Accordingly, the Debtor submits that no prejudice to creditors or other parties in interest would result from granting the relief requested herein.

**B.    PAYMENT OF THE EMPLOYEE OBLIGATIONS IS APPROPRIATE UNDER SECTION 541 OF THE BANKRUPTCY CODE.**

33.    The Debtor seeks authority to pay the Deductions and Unremitted Payroll Taxes, which principally represent Employee earnings that governments and judicial authorities have designated for deduction from their pay.  Indeed, certain deductions, including contributions to various employee benefit programs and child support and alimony payments, are not property of the Debtor's estate because they have been withheld from Employees' paychecks on another party's behalf.  *See* 11 U.S.C. § 541(b); *Begier v. IRS*, 496 U.S. 53, 59 (1990) (holding that taxes such as excise taxes, FICA taxes, and withholding taxes are property held by the debtor in trust for another and, as such, do not constitute property of the estate); *see also Old Republic Nat'l Title Ins. Co. v. Tyler (In re Dameron)*, 155 F.3d 718, 721 (4th Cir. 1998) (holding that deposits subject to an express trust are excluded from the bankruptcy estate); *City of Farrell v. Sharon Steel Corp. (In re Sharon Steel Corp.)*, 41 F.3d 92, 98-103 (3d Cir. 1994) (finding that funds withheld from employees' paychecks may be subject to a trust, and thus are not property of a debtor's estate, even where such funds were commingled with the debtor's other property).  Accordingly, such funds are not available for general distribution to a debtor's creditors.  Further, federal and state laws require the Debtor and its officers to make certain tax payments that have been withheld from the employees' paychecks.  *See* 26 U.S.C. § 6672 and 7501(a); s*ee also City of Farrell v. Sharon Steel Corp.*, 41 F.3d 92, 95-97 (3d Cir. 1994) (finding that state law requiring a corporate debtor to withhold city income tax from its employees' wages created a trust relationship between debtor and the city for payment of withheld income taxes); *DuCharmes & Co., Inc. v. State of Mich. (In re DuCharmes & Co.)*, 852 F.2d 194, 196 (6th Cir. 1988) (noting that individual officers of a

company may be held personally liable for failure to pay trust fund taxes).  Because the deductions and payroll taxes are not property of the Debtor's estate, the Debtor requests that this Court authorize the Debtor to transmit the deductions and payroll taxes to the proper parties.  Otherwise, any exposure to personal liability would result in the unnecessary distraction of the Debtor's directors and officers during this critical stage of this Chapter 11 Case.

## C.    THE PROPOSED PAYMENTS ARE APPROPRIATE UNDER SECTIONS 363(B), 1107(A) AND 1108 OF THE BANKRUPTCY CODE AND THE DOCTRINE OF NECESSITY.

34.    Courts in this district and elsewhere generally acknowledge that it is appropriate to authorize the payment of prepetition obligations where necessary to protect and preserve the estate. *See In re Columbia Gas Sys., Inc.*, 171 B.R. 189, 191 92 (Bankr. D. Del. 1994) (finding that a debtor is entitled to pay certain prepetition creditors upon a showing that the payment is "essential to the continued operation of the business") (citations omitted); *In re Ionosphere Clubs, Inc.*, 98 B.R. 174, 175 (Bankr. S.D.N.Y. 1989) (authority to pay prepetition wages); *Armstrong World Indus., Inc. v. James A. Phillips, Inc., (In re James A. Phillips, Inc.)*, 29 B.R. 391, 398 (S.D.N.Y. 1983) (authority to pay prepetition claims of suppliers); *see also In re CoServ, L.L.C.*, 273 B.R. 487, 497 (Bankr. N.D. Tex. 2002).

35.    Section 363(b)(1) of the Bankruptcy Code empowers the Court to allow a debtor to "use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1).  The Debtor's decision to use, sell, or lease assets outside the ordinary course of business must be based upon the sound business judgment of the Debtor.  *See, e.g., In re Martin (Myers v. Martin)*, 91 F.3d 389, 395 (3d Cir. 1996) (citing *In re Schipper (Fulton State Bank v. Schipper)*, 933 F.2d 513, 515 (7th Cir. 1991)); *Comm. of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.)*, 722 F.2d 1063, 1070 (2d Cir. 1983); *In re Abbotts Dairies of Penn., Inc.*, 788 F.2d 143 (3d Cir. 1986) (implicitly adopting the "sound business purpose" test of Lionel Corp. and

requiring good faith); *In re Montgomery Ward Holding Corp.*, 242 B.R. 147, 153 (D. Del. 1999);
*In re Del. and Hudson Ry. Co.*, 124 B.R. 169, 176 (D. Del. 1991) (concluding that the Third Circuit
adopted the "sound business purpose" test in the Abbotts Dairies decision).

36.     The payment of the Employee Obligations and continuation of the Employee
Benefits Programs serve the sound business purpose of maximizing the value of the Debtor's
estate.  The Debtor's success in this Chapter 11 Case, and the future of the reorganized company,
hinges in large part on the morale and continued dedication and efforts of its Employees.  The vast
majority of the Employees rely exclusively on their compensation, benefits, and reimbursement of
expenses to satisfy their daily living expenses, support their families, and maintain their health and
well-being.  Consequently, these Employees would be exposed to significant financial difficulties
if the Debtor was not permitted to (i) continue paying compensation, (ii) provide employee
benefits, and (iii) maintain existing programs.  Through the payment of the Employee Obligations,
the Debtor seeks to motivate and encourage the Employees to continue to support the Debtor's
reorganization efforts.  Accordingly, this Court should grant the requested relief under section 363
of the Bankruptcy Code.

37.     Further, the Debtor, operating its business as a debtor-in-possession under sections
1107(a) and 1108 of the Bankruptcy Code, is a fiduciary "holding the bankruptcy estate[s] and
operating the business[es] for the benefit of [their] creditors and (if the value justifies) equity
owners."  *In re CoServ, L.L.C.*, 273 B.R. 487, 497 (Bankr. N.D. Tex. 2002).  Implicit in the duties
of a chapter 11 debtor-in-possession is the duty "to protect and preserve the estate, including an
operating business's going-concern value."  *Id*.  Courts have noted that there are instances in which
a debtor-in-possession can fulfill its fiduciary duty "only . . . by the preplan satisfaction of a
prepetition claim."  *Id*.  The *CoServ* court specifically noted that preplan satisfaction of prepetition

- 14 -

claims would be a valid exercise of a debtor's fiduciary duty when the payment "is the only means

to effect a substantial enhancement of the estate." *Id*. The court provided a three-pronged test for

determining whether a preplan payment on account of a prepetition claim was a valid exercise of

a debtor's fiduciary duty:

> First, it must be critical that the debtor deal with the claimant. Second, unless it deals with the claimant, the debtor risks the probability of harm, or, alternatively, loss of economic advantage to the estate or the debtor's going concern value, which is disproportionate to the amount of the claimant's prepetition claim. Third, there is no practical or legal alternative by which the debtor can deal with the claimant other than by payment of the claim.

*Id.* at 498.

38.     Payment of the Employee Obligations meets each element of the *CoServ* court's

standard. As described above, the Employees likely hold priority claims against the Debtor for

the Prepetition Obligations subject to the limitations imposed by sections 507(a)(4) and (a)(5) of

the Bankruptcy Code. The potential harm and economic disadvantage that would stem from the

failure to pay the Employee Obligations is grossly disproportionate to the amount of any

prepetition claim that may be paid. Any failure by the Debtor to pay the Employee Obligations

would negatively impact the morale of the Debtor's workforce at a critical time for the Debtor and

its business. The Debtor seeks to minimize the personal hardship the Employees would suffer if

the Employee Obligations are not paid when due or as expected. The Debtor has examined other

options short of payment of the Employee Obligations and have determined that to avoid

significant disruption of the Debtor's business operations there exists no practical or legal

alternative to payment of such obligations. Therefore, the Debtor can only meet its fiduciary duty

as a debtor-in-possession under sections 1107(a) and 1108 of the Bankruptcy Code by payment of

the Employee Obligations.

**D.      THE DOCTRINE OF NECESSITY AND SECTION 105(A) OF THE BANKRUPTCY CODE FURTHER SUPPORT THE CONCLUSION THAT THE PROPOSED PAYMENTS ARE APPROPRIATE.**

39.     The Debtor's proposed payment of the Employee Obligations should also be authorized pursuant to section 105(a) of the Bankruptcy Code and the "doctrine of necessity." Section 105(a) of the Bankruptcy Code, which codifies the inherent equitable powers of the bankruptcy court, empowers the court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). A Bankruptcy Court's use of its equitable powers to "authorize the payment of pre-petition debt when such payment is needed to facilitate the rehabilitation of the debtor is not a novel concept." *Ionosphere Clubs*, 98 B.R. at 175. Moreover, "[u]nder Section 105, the court can permit pre-plan payment of a pre-petition obligation when essential to the continued operation of the debtor." *In re NVR L.P.*, 147 B.R. 126, 127 (Bankr. E.D. Va. 1992) (citing *Ionosphere Clubs*, 98 B.R. at 177). The authority to pay such prepetition obligations is known as the "necessity of payment" rule (also referred to as the "doctrine of necessity"). The doctrine of necessity "recognizes the existence of the judicial power to authorize a debtor in a reorganization case to pay pre-petition claims where such payment is essential to the continued operation of the debtor." *Ionosphere Clubs*, 98 B.R. at 176; *see also In re Just for Feet, Inc.*, 242 B.R. 821, 826 (D. Del. 1999) (stating that where the debtor "cannot survive" absent payment of certain prepetition claims, the doctrine of necessity should be invoked to permit payment); *In re Eagle-Picher Indus., Inc.*, 124 B.R. 1021, 1023 (Bankr. S.D. Ohio 1991) ("[T]o justify payment of a prepetition unsecured creditor, a debtor must show that the payment is necessary to avert a serious threat to the chapter 11 process.").

40.     The doctrine of necessity is an accepted component of modern bankruptcy jurisprudence. *See Just For Feet*, 242 B.R. at 826 (approving payment of key inventory suppliers' prepetition claims when such suppliers could destroy debtor's business by refusing to deliver new

inventory on eve of debtor's key sales season); *In re Payless Cashways, Inc.*, 268 B.R. 543, 546–47 (Bankr. W.D. Mo. 2001) (authorizing payment of critical prepetition suppliers' claims when such suppliers agree to provide postpetition trade credit); *see also In re Ionosphere Clubs, Inc.*, 98 B.R. at 175, *In re Columbia Gas Sys., Inc.*, 171 B.R. 189, 191–92 (Bankr. D. Del. 1994). Moreover, courts have recognized the applicability of the doctrine of necessity with respect to the payment of prepetition employee compensation and benefits. *See, e.g., Mich. Bureau of Workers' Disability Comp. v. Chateaugay Corp. (In re Chateaugay Corp.)*, 80 B.R. 279, 285–89 (S.D.N.Y. 1987) (under "necessity of payment" doctrine, it is appropriate for bankruptcy court to defer to Debtor's business judgment in permitting payment of certain workers' compensation claims); *In re Ionosphere Clubs, Inc.*, 98 B.R. at 176 ("This rule recognizes the existence of the judicial power to authorize a debtor in a reorganization case to pay prepetition claims where such payment is essential to the continued operation of the debtor.").

41.     Based on the above legal principles, the relief requested represents a sound exercise of the Debtor's business judgment, is necessary to avoid immediate and irreparable harm to the Debtor's estate, and is, therefore, justified under the applicable authority.  Paying the Employee Obligations and continuing with the Employee Benefits Programs will benefit the Debtor's estate and its creditors by allowing the Debtor to continue business operations postpetition.  The Employees provide the Debtor with services essential to conduct the Debtor's business, and the Debtor believes that absent the payment of the employee compensation and benefits owed to the Employees, the Debtor will experience employee turnover and instability at this critical time.

42.     Payment of the Employee Obligations is a necessary and critical element of the Debtor's effort to preserve its going concern value and will give the Debtor the greatest likelihood of retention of its Employees as the Debtor seeks to operate its business in this Chapter 11 Case.

Indeed, the Debtor believes that without the relief requested herein, its Employees may seek alternative opportunities. Such a development would deplete the Debtor's workforce, thereby undermining the Debtor's restructuring efforts.

43.     Accordingly, for all of the foregoing reasons, the Debtor submits that cause exists for granting the relief requested in this Motion.

**E.     THE COURT SHOULD AUTHORIZE APPLICABLE BANKS TO HONOR AND PAY CHECKS USED AND MAKE OTHER TRANSFERS TO PAY THE EMPLOYEE OBLIGATIONS.**

44.     In connection with the relief requested in this Motion, the Debtor also requests that (a) the Banks be authorized and directed to receive, process, honor, and pay all checks presented for payment of, and to honor all fund transfer requests made by the Debtor related to, the claims that the Debtor requests authority to pay in this Motion, regardless of whether the checks were presented or fund transfer requests were submitted before or after the Petition Date, (b) the Banks rely on the Debtor's designation of any particular check as approved by the Proposed Orders; and (c) authorize the Debtor to issue replacement checks or transfers, to the extent any check or transfer in relation to the claims the Debtor request authority to pay in this Motion is dishonored or rejected by the banks and other financial institutions.

## IMMEDIATE RELIEF IS IMPERATIVE

45.     Bankruptcy Rule 6003 empowers a court to grant relief within the first twenty-one (21) days after the Petition Date to the extent that relief is necessary to avoid "immediate and irreparable harm." FED. R. BANKR. P. 6003. Specifically, Bankruptcy Rule 6003 provides that "[e]xcept to the extent that relief is necessary to avoid immediate and irreparable harm, the court shall not, within 21 days after the filing of the petition, issue an order granting . . . (b) a motion to use, sell, lease, or otherwise incur an obligation regarding property of the estate, including a motion to pay all or part of a claim that arose before the filing of the petition . . . ." *Id.* For reasons

discussed above, authorizing the Debtor to pay Employee Obligations and to continue its Employee Benefits Programs and directing the Banks at which the Debtor maintains disbursement and other accounts to process and pay, to the extent of funds on deposit, any and all electronic funds transfers in connection with the Employee Obligations and Employee Benefits Programs, at the Debtor's direction, is integral to the Debtor's ability to successfully reorganize.  Failure to receive such authorization and other relief during the first twenty-one (21) days of this Chapter 11 Case would severely disrupt the Debtor's operations at this critical juncture.  For the reasons discussed herein, the relief requested is necessary in order for the Debtor to operate its business in the ordinary course and preserve the ongoing value of the Debtor's operation, thus maximizing the value of its estate for the benefit of all stakeholders.  Accordingly, the Debtor submits that it has satisfied the "immediate and irreparable harm" standard of Bankruptcy Rule 6003 to support granting the relief requested herein.

### WAIVER OF STAY UNDER BANKRUPTCY RULE 6004(a) AND 6004(h)

46.     The Debtor also requests that, to the extent applicable to the relief requested in this Motion, the Court waive the stay imposed by Bankruptcy Rule 6004(h), which provides that "[a]n order authorizing the use, sale, or lease of property other than cash collateral is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise." FED. R. BANKR. P. 6004(h).  As described above, the relief that the Debtor seeks in this Motion is necessary for the Debtor to operate its business without interruption and to preserve value for its estate.  To implement the foregoing successfully, the Debtor requests that the Court enter an order providing that notice of the relief requested herein satisfies Bankruptcy Rule 6004(a) and that the Debtor has established cause to exclude such relief from the 14-day stay period under Bankruptcy Rule 6004(h).

## **RESERVATION OF RIGHTS**

47.     Nothing contained in this Motion is intended or shall be construed as (a) an admission as to the validity of any claim against the Debtor, (b) a waiver of the Debtor or any party-in-interest's rights to dispute any claim, or (c) an approval or assumption of any agreement under section 365 of the Bankruptcy Code.  Likewise, if this Court grants the relief sought herein, any payment made pursuant to the interim order or final order is not intended and should not be construed as an admission as to the validity of any claim or a waiver of the Debtor's right to dispute such claim at a later date.

## **NOTICE**

48.     Notice of this Motion shall be provided to: (a) the Office of the United States Trustee for the District of Delaware; (b) the Debtor's twenty (20) largest unsecured creditors as identified on the voluntary petition; and (c) the United States Attorney's Office for the District of Delaware.  As this Motion is seeking "first-day" relief, notice of this Motion and any order entered hereon will be served on all parties required by Local Rule 9013-1(m).  Due to the urgency of the circumstances surrounding this Motion and the nature of the relief herein, the Debtor respectfully submits that no further notice of this Motion is required.

**WHEREFORE**, the Debtor respectfully requests entry of the Interim Order, and pending a final hearing, the Final Order, granting the relief requested in the Motion and such other and further relief as this Court deems just and appropriate.

Dated:  August 19, 2019
        Wilmington, Delaware

CHIPMAN BROWN CICERO & COLE, LLP


_/s/ Mark L. Desgrosseilliers_

Mark L. Desgrosseilliers (No. 4083)
Hercules Plaza
1313 North Market Street, Suite 5400
Wilmington, Delaware 19801
Telephone:    (302) 295-0192
Facsimile:    (302) 295-0199
Email:        desgross@chipmanbrown.com

        and

**Squire Patton Boggs (US) LLP**
Mark A. Salzberg (*pro hac vice* pending)
Christopher J. Giaimo (*pro hac vice* pending)
Jeffrey N. Rothleder (*pro hac vice* pending)
2550 M Street, NW
Washington, DC 20037
Telephone:    202-457-6000
Facsimile:    202-457-6315
Email:        mark.salzberg@squirepb.com
              christopher.giaimo@squirepb.com
              jeffrey.rothleder@squirepb.com

*Proposed Counsel to the Debtor and Debtor-in-Possession*

# EXHIBIT A

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| NATIONAL PRODUCT ASSOCIATION,[1] | Case No. 19-11849 |
| Debtor. | **Related Docket No. _____** |

### *INTERIM* ORDER (I) AUTHORIZING THE DEBTOR TO
### (A) PAY CERTAIN PREPETITION WAGES, SALARIES,
### BENEFITS, AND OTHER COMPENSATION, AND (B) MAINTAIN
### EMPLOYEE BENEFITS PROGRAMS AND PAY RELATED
### OBLIGATIONS, AND (II) GRANTING RELATED RELIEF

Upon the motion (the "***Motion***")[2] of the above-captioned debtor and debtor-in-possession (the "***Debtor***") for entry of interim and final orders, pursuant to sections 105(a), 363(b)(1), 507(a), 541, 1107, and 1108 of the Bankruptcy Code, Bankruptcy Rules 6003 and 6004, and Local Rule 9013-1(m), (i) authorizing the Debtor to (a) pay certain prepetition wages, benefit and other compensation, and (b) continue employee compensation and employee benefit programs, and (ii) granting related relief, all as further described in the Motion; and upon consideration of the Motion and First Day Declaration; the Court having found that (i) the Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012, (ii) venue is proper in this district pursuant to 28 U.S.C. § 1409, (iii) this is a core proceeding pursuant to 28 U.S.C. § 157(b), and (iv) notice of the Motion was sufficient under the circumstances and no other or further notice need to be provided; the Court having reviewed the Motion and the First Day Declaration and having considered the statements of counsel and the evidence adduced with respect to the Motion at the hearing; after due deliberation, the Court having determined that the relief

---

[1] The Debtor in this case, along with the last four digits of the federal tax identification number, is National Product Association (6719). The Debtor's headquarters are located at 440 1st Street N.W., Suite 520, Washington, DC 20001.

[2] Unless otherwise defined herein, all capitalized terms shall have the meanings ascribed thereto in the Motion.

requested in the Motion is in the best interests of the Debtor, its estate, its creditors, and all other parties interested in this case; and good and sufficient cause having been shown,

**IT IS HEREBY ORDERED THAT:**

1.      The Motion is GRANTED on an interim basis as set forth in this Interim Order.

2.      The Debtor is authorized, but not required, to (i) pay or cause to be paid all amounts, required under or related to the Employee Obligations in the ordinary course of business and in accordance with the same practices and procedures as were in effect prior to the Petition Date up to a maximum aggregate cap of Twenty Thousand Dollars ($20,000.00), (ii) continue to pay and honor, or cause to be paid, all obligations arising under or related to the Employee Benefits Programs and other policies and benefits in the ordinary course of business and in accordance with the same practices and procedures as were in effect prior to the Petition Date, as such Employee Benefits Programs may be modified, terminated, amended, or supplemented from time to time in the ordinary course of the Debtor's business, and (iii) pay any processing costs related to the foregoing that have accrued and remain unpaid (including those amounts that remain unpaid as a result of dishonoring of checks due to the filing of this Chapter 11 Case) as of the Petition Date to or for the benefit of its Employees, subject to the limitations imposed by subsections 507(a)(4) and 507(a)(5) of the Bankruptcy Code and entry of a final order on the Motion; *provided, however*, that nothing in this Interim Order shall be construed as prohibiting the Debtor from seeking this Court's authorization to pay any Employee Obligations above the cap imposed by subsections 507(a)(4) and 507(a)(5) of the Bankruptcy Code, and the Debtor expressly reserves the right to do so.

3.      Nothing in this Interim Order shall be deemed to authorize the Debtor to cash out unpaid PTO Payouts, upon termination of an Employee, unless applicable state law requires such payment.

4.      Notwithstanding any other provision of this order, no payments to any individual employee shall exceed the amounts set forth in 11 U.S.C. §§ 507(a)(4) and 507(a)(5).  In addition, nothing herein shall be deemed to authorize the payment of any amounts in satisfaction of bonus or severance obligations, or which are subject to section 503(c) of the Bankruptcy Code.

5.      The Banks and financial institutions (including the Payroll Processor) on which checks were drawn or electronic payment requests made in payment of the prepetition obligations approved herein are authorized to receive, process, honor, and pay all such checks and electronic payment requests when presented for payment, including all checks issued prepetition and presented for payment postpetition, and all such Banks and financial institutions are authorized to rely on the Debtor's designation of any particular check or electronic payment request as approved by this Interim Order. The Debtor is authorized to reissue any check or electronic payment that originally was given in payment of any prepetition amount authorized to be paid under this Interim Order and is not cleared by the applicable Bank or other financial institution.

6.      A final hearing (the "***Final Hearing***") on the full relief requested in the Motion shall be held on _____, 2019 at _____:_____ __.m. (*prevailing* Eastern Time). Any objections or responses to entry of a final order on the Motion (each, an "***Objection***") shall be filed on or before 4:00 p.m. *prevailing* Eastern Time on _____,   2019,   and served on the following parties: (a) the Debtor, National Product Association, 440 1st Street NW, Washington, DC 20001 (*Attn*: Daniel Fabricant, Ph.D., President and Chief Executive Officer); (b) *proposed* counsel for the Debtor, (i) Squire Patton Boggs (US) LLP, 2550 M Street, NW, Washington, DC 20037 (*Attn*: Christopher J. Giaimo, Esquire and Mark A. Salzberg, Esquire); and (ii) Chipman Brown Cicero & Cole, LLP, Hercules Plaza, 1313 North Market Street, Suite 5400, Wilmington, Delaware 19801 (*Attn:* Mark L. Desgrosseilliers, Esquire); (c) the Office of the United States Trustee, J. Caleb Boggs Federal Building, 844 King Street, Lockbox 35,

Wilmington, Delaware 19801 (*Attn*: Richard L. Schepacarter, Esquire); and (d) counsel to any official committee of unsecured creditors appointed in this case.  In the event no Objections to entry of a final order on the Motion are timely received, this Court may enter such final order without need for the Final Hearing.

6.      Notwithstanding any other provision of this Interim Order, no payments to any individual Employee shall exceed the amounts set forth in subsections 507(a)(4) and (a)(5) of the Bankruptcy Code, as applicable.

7.      Nothing herein shall be deemed to authorize the payments of any amounts which are subject to section 503(c) of the Bankruptcy Code.

8.      The contents of the Motion satisfy the requirements of Bankruptcy Rule 6003(b).

9.      Notice of the Motion satisfies the requirements of Bankruptcy Rule 6004(a).

10.     Notwithstanding Bankruptcy Rule 6004(h) or any Local Rule that might otherwise delay the effectiveness of this Interim Order, the terms and conditions of this Interim Order are immediately effective and enforceable upon its entry.

11.     The Debtor is authorized to take all actions necessary to effectuate the relief granted in this Interim Order in accordance with the Motion.

12.     Nothing in the Motion or this Interim Order, nor the Debtor's payment of claims pursuant to this Interim Order shall be deemed or construed as (a) an admission as to the validity, priority, or amount of any claim against the Debtor or its estate; (b) a waiver of the rights of the Debtor and its estate to dispute any claim on any grounds; (c) a promise to pay any claim; (d) an implication or admission that any particular claim is a claim for Prepetition Obligation; (e) an approval or assumption of any contract or agreement pursuant to section 365 of the Bankruptcy Code; (f) the waiver of any cause of action of the Debtor and its estate; or (g) impairing,

prejudicing, waiving, or otherwise affecting any rights of the Debtor and its estate on account of any amounts owed or paid on account of Prepetition Obligations.

13.    This Court shall retain jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Interim Order.

# **<u>EXHIBIT B</u>**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re: | Chapter 11 |
| NATIONAL PRODUCT ASSOCIATION,[1] | Case No. 19-11849 |
| Debtor. | **Related Docket No. _____** |

### *FINAL* ORDER (I) AUTHORIZING THE DEBTOR
### TO (A) PAY CERTAIN PREPETITION WAGES,
### SALARIES, BENEFITS, AND OTHER COMPENSATION,
### AND (B) MAINTAIN EMPLOYEE BENEFITS PROGRAMS AND PAY
### RELATED OBLIGATIONS, AND (II) GRANTING RELATED RELIEF

Upon the motion (the "***Motion***")[2] of the above-captioned debtor and debtor-in-possession (the "***Debtor***") for entry of interim and final orders pursuant to sections 105(a), 363(b)(1), 507(a), 541, 1107, and 1108 of the Bankruptcy Code, Bankruptcy Rules 6003 and 6004, and Local Rule 9013-1(m), (i) authorizing the Debtor to (a) pay certain prepetition wages, benefit and other compensation, and (b) continue employee compensation and employee benefit programs, and (ii) granting related relief, all as further described in the Motion; and upon consideration of the Motion and First Day Declaration; the Court having found that (i) the Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012, (ii) venue is proper in this district pursuant to 28 U.S.C. § 1409, (iii) this is a core proceeding pursuant to 28 U.S.C. § 157(b), and (iv) notice of the Motion was sufficient under the circumstances and no other or further notice need to be provided; the Court having reviewed the Motion and the First Day Declaration and having considered the statements of counsel and the

---

[1] The Debtor in this case, along with the last four digits of the federal tax identification number, is National Product Association (6719).  The Debtor's headquarters are located at 440 1st Street N.W., Suite 520, Washington, DC 20001.

[2] Unless otherwise defined herein, all capitalized terms shall have the meanings ascribed thereto in the Motion.

evidence adduced with respect to the Motion at the interim hearing; and the Court having granted the relief requested in the Motion on _____, 2019 [Docket No._____]; after due deliberation, the Court having determined that the relief requested in the Motion is in the best interests of the Debtor, its estate, its creditors, and all other parties interested in this case; and good and sufficient cause having been shown,

**It Is Hereby ORDERED That:**

1.  The Motion is GRANTED on a final basis, as set forth in this Final Order.

2.  The Debtor is authorized, but not required, to pay or cause to be paid all amounts required under or related to the Employee Obligations in the ordinary course of business and in accordance with the same practices and procedures as were in effect prior to the Petition Date.

3.  The Debtor is authorized, but not directed to, to continue to pay and honor, or cause to be paid, all obligations arising under or related to the Employee Benefits Programs and other policies and benefits in the ordinary course of business and in accordance with the same practices and procedures as were in effect prior to the Petition Date, as such Employee Benefits Programs and policies and benefits may be modified, terminated, amended, or supplemented from time to time in the ordinary course of the Debtor's business.

4.  The Debtor is authorized, but not directed, to pay any processing costs related to the Employee Obligations, Employee Benefits Programs, and policies and benefits that have accrued and remain unpaid (including those amounts that remain unpaid as a result of dishonoring of checks due to the filing of this Chapter 11 Case) as of the Petition Date to or for the benefit of its Employees.

5.      The Debtor is authorized, but not directed, to honor all obligations under the Debtor's Paid Time Off policy, including making cash payments with respect to accrued, but unused PTO Payouts, to non-insider Employees upon their termination.

6.      The Banks and financial institutions (including the Payroll Processor) on which checks were drawn or electronic payment requests made in payment of the prepetition obligations approved herein are authorized to receive, process, honor, and pay all such checks and electronic payment requests when presented for payment, including all checks issued prepetition and presented for payment postpetition, and all such Banks and financial institutions are authorized to rely on the Debtor's designation of any particular check or electronic payment request as approved by this Final Order. The Debtor is authorized to reissue any check or electronic payment that originally was given in payment of any prepetition amount authorized to be paid under this Final Order and is not cleared by the applicable Bank or other financial institution.

7.      Nothing herein shall be deemed to authorize the payments of any amounts which are subject to section 503(c) of the Bankruptcy Code.

8.      The contents of the Motion satisfy the requirements of Bankruptcy Rule 6003(b).

9.      Notice of the Motion satisfies the requirements of Bankruptcy Rule 6004(a).

10.     Notwithstanding Bankruptcy Rule 6004(h) or any Local Rule that might otherwise delay the effectiveness of this Final Order, the terms and conditions of this Final Order are immediately effective and enforceable upon its entry.

11.     The Debtor is authorized to take all actions necessary to effectuate the relief granted in this Final Order in accordance with the Motion.

12.     Nothing in the Motion or this Final Order, nor the Debtor's payment of claims pursuant to this Final Order shall be deemed or construed as (a) an admission as to the validity,

priority, or amount of any claim against the Debtor or its estate; (b) a waiver of the rights of the Debtor and its estate to dispute any claim on any grounds; (c) a promise to pay any claim; (d) an implication or admission that any particular claim is a claim for Prepetition Obligation; (e) an approval or assumption of any contract or agreement pursuant to section 365 of the Bankruptcy Code; (f) the waiver of any cause of action of the Debtor and its estate; or (g) impairing, prejudicing, waiving, or otherwise affecting any rights of the Debtor and its estate on account of any amounts owed or paid on account of Prepetition Obligations.

13.     This Court shall retain jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Final Order.