## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| NATIONAL PRODUCT ASSOCIATION,[1] | Case No. 19-11849 |
| Debtor. | |

### DEBTOR'S MOTION FOR THE ENTRY OF INTERIM AND FINAL ORDERS (I) AUTHORIZING THE DEBTOR'S PROPOSED FORM OF ADEQUATE ASSURANCE OF PAYMENT, (II) ESTABLISHING PROCEDURES FOR RESOLVING OBJECTIONS BY UTILITY COMPANIES, AND (III) PROHIBITING UTILITY COMPANIES FROM ALTERING, REFUSING, OR DISCONTINUING SERVICE

The above-captioned debtor and debtor-in-possession (the "*Debtor*"), by and through its *proposed* counsel, submits this *Motion for the Entry of Interim and Final Orders (i) Authorizing the Debtor's Proposed Form of Adequate Assurance of Payment, (ii) Establishing Procedures for Resolving Objections by Utility Companies, and (iii) Prohibiting Utility Companies from Altering, Refusing, or Discontinuing Service* (the "*Motion*"), in which the Debtor seeks entry of interim and final orders, substantially in the forms attached to this Motion as **Exhibit A** and **Exhibit B**, respectively, pursuant to sections 105(a), 362 and 366 of title 11 of the United States Code (the "*Bankruptcy Code*"), and Rules 6003 and 6004 of the Federal Rules of Bankruptcy Procedure (the "*Bankruptcy Rules*"), (i) authorizing the Debtor's proposed form of adequate assurance of postpetition payment to the Utility Companies (*as defined in this Motion*), (ii) establishing procedures for resolving any objections by the Utility Companies relating to the Proposed Adequate Assurance (*as defined in this Motion*), and (iii) prohibiting the Utility Companies from altering, refusing, or discontinuing service to, or discriminating against, the

---

[1] The Debtor in this case, along with the last four digits of the federal tax identification number. is National Product Association (6719).   The Debtor's headquarters are located at 440 1st Street N.W., Suite 520, Washington, DC 20001.

Debtor solely on the basis of the commencement of this case, a debt that is owed by the Debtor for services rendered prior to the Petition Date (*as defined in this Motion*), or on account of any perceived inadequacy of the Debtor's Proposed Adequate Assurance.  In support of the Motion, the Debtor relies upon and incorporates by reference the statements contained in the *Declaration of Daniel Fabricant, Ph.D. in Support of Chapter 11 Filing and First Day Motions* (the "***First Day Declaration***").   In further support of the Motion, the Debtor respectfully represents as follows:

## JURISDICTION AND VENUE

1.      This Court has jurisdiction over the Debtor, its estate, and this Motion under 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated as of February 29, 2012. This is a core proceeding under 28 U.S.C. § 157(b).

2.      Venue in this district is proper under 28 U.S.C. §§ 1408 and 1409.

3.      The Debtor consents, pursuant to Rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "***Local Rules***"), to the entry of a final judgment or order with respect to this Motion, if it is determined that the Court would lack Article III jurisdiction to enter such final order or judgment absent consent of the parties.

4.      The statutory predicates for the relief requested in this Motion are sections 105(a), 362 and 366 of the Bankruptcy Code.

## BACKGROUND

5.       On the date hereof (the "***Petition Date***"), the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware (the "***Court***"), thereby commencing this case (the "***Chapter 11 Case***").

6.       The Debtor continues to be in possession of its property, operate its business, and manage its property as a debtor-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

7.       No trustee, examiner, or official committee of unsecured creditors has been appointed in this Chapter 11 Case.

8.       Additional factual background regarding the Debtor, including its business operations, its capital and debt structures, and the events leading to the commencement of this Chapter 11 Case, is set forth in the First Day Declaration, which is fully incorporated here by reference.

## REQUESTED RELIEF

9.       By this Motion, the Debtor seeks the entry of interim and final orders, substantially in the form attached hereto, (a) approving the Debtor's proposed form of adequate assurance of postpetition payment to its utilities, as that term is used in section 366 of the Bankruptcy Code (the "***Utility Companies***"), of a two (2) week deposit for each Utility Company for a total of approximately $600.00, (b) approving procedures for resolving any objections by the Utility Companies relating to the Proposed Adequate Assurance, and (c) prohibiting the Utility Companies from altering, refusing, or discontinuing service to, or discriminating against, the Debtor solely on the basis of the commencement of this case, a debt that is owed by the Debtor for services rendered prior to the Petition Date, or on account of any perceived

inadequacy of the Debtor's Proposed Adequate Assurance (*as defined below*) pending entry of the Final Order, and (d) scheduling a hearing on this Motion to consider granting the relief requested in this Final Order on a final basis (the "***Final Hearing***").

10.     In connection with the operation of its businesses and the management of its properties, the Debtor obtains utility telephone and cable services (collectively, the "***Utility Services***"), from the Utility Companies.  The relief requested in this Motion is for all Utility Companies providing Utility Services to the Debtor and is not limited to those listed on the list of providers of Utility Services attached to the Final Order as **Schedule 1** (the "***Utility Company List***").  The Debtor has made an extensive and good faith effort to identify all of the Utilities that provide them Utility Services and to include them in **Schedule 1**.[2]  Nevertheless, the Debtor reserves the right to supplement **Schedule 1** by filing a notice (a "***Supplemental Notice***," and together with Schedule 1, as may be so supplemented, the "***Utilities List***") at a later date with the Court if necessary.

11.     On average, prior to the Petition Date, the Debtor spent approximately $1,000.00 each month on account of Utility Services.  To the best of the Debtor's knowledge, there are few, if any, material defaults or arrearages with respect to the Debtor's undisputed Utility Services invoices, other than payment interruptions that may be caused by the commencement of this Chapter 11 Case.  None of the Utility Companies hold deposits as reflected on **Schedule 1**.

12.     Uninterrupted Utility Services are essential to the Debtor's business operations during the pendency of this Chapter 11 Case.  Should any Utility Company alter, refuse, or discontinue service, even for a brief period, the Debtor's business operations could be severely

---

[2]   The Debtor maintains a lease for its principal place of business located at 440 1st Street NW, Washington, D.C. 20001.  Under the terms of the lease agreement (the "*Lease Agreement*") for said property, certain of the Debtor's Utilities are paid directly to the landlord.  Therefore, the Debtor does not make any direct payments to

disrupted, and such disruption would jeopardize the Debtor's reorganizational efforts.   It is essential that the Utility Services continue uninterrupted.   Accordingly, the Debtor seeks to establish an orderly process for providing adequate assurance to the Utility Companies without jeopardizing the Debtor's business operations.

## I.   THE PROPOSED ADEQUATE ASSURANCE.

13.   Pursuant to section 366(c)(2) of the Bankruptcy Code, a utility may alter, refuse or discontinue a chapter 11 debtor's utility service if the utility does not receive from the debtor or the trustee adequate "assurance of payment" within thirty (30) days of the commencement of the debtor's chapter 11 case.[3] Section 366(c)(1)(A) of the Bankruptcy Code defines the phrase "assurance of payment" to mean, among other things, a cash deposit.

14.   The Debtor fully intends to pay all undisputed postpetition obligations owed to the Utility Companies in a timely manner.   Additionally, the Debtor proposes to provide "assurance of payment" to Utility Companies within twenty (20) days after the Petition Date by placing a cash deposit (the "*Adequate Assurance Deposit*") equal to the cost of Utility Services for a period of two (2) weeks, calculated based on the historical weekly average costs, into a

---

these Utility Companies.  The Debtor intends to continue to remit these payments to the landlord in the ordinary course postpetition.

[3]   There is an apparent discrepancy between subsections (b) and (c) of section 366 of the Bankruptcy Code as these two subsections set forth different time periods during which a utility is prohibited from altering, refusing or discontinuing utility service.  Specifically, section 366(b) allows a utility to alter, refuse or discontinue service "if neither the trustee nor the debtor, within *20 days* after the date of the order for relief, furnishes adequate assurance of payment," while section 366(c)(2) of the Bankruptcy Code allows a utility in "a case filed under chapter 11" to alter, refuse or discontinue service to a chapter 11 debtor "if during the *30-day period* beginning on the date of the filing of the petition, the utility does not receive from the debtor or the trustee adequate assurance of payment for utility service…." (emphases added).

Under the statutory construction canon *lex specialis derogat legi generali* ("specific language controls over general"), the language of section 366(c)(2) controls here because the Debtor ia a chapter 11 debtor. *See* 3 *Collier on Bankruptcy* ¶ 366.03[2] (Alan N. Resnick & Henry J. Sommer eds., 15th ed. rev. 2008) ("It is unclear how the 30-day period [in section 366(c)(2) of the Bankruptcy Code] meshes with the normal 20-day period in section 366(b).  The better view is that, because section 366(c) is more specifically applicable to chapter 11 cases, the 30-day period, rather than the 20-day period in section 366(b), should apply" in chapter 11.); *In re Astle*, 338 B.R. 855, 859 (Bankr. D. Idaho 2006) (deciding that the provisions of Bankruptcy Code section 366(c) only apply in chapter 11 cases).

newly created, segregated account (the "***Utility Deposit Account***") for the benefit of any Utility Company, unless any such Utility Company agrees in writing to a lesser amount, is paid in advance for Utility Services, or already holds a deposit equal to or greater than two weeks of Utility Services.   The Debtor estimates that the total amount of such deposit would be approximately $600.00.   No creditor of the Debtor shall have any interest in or lien on the Adequate Assurance Deposit or the Utility Deposit Account.

15.     Where the Debtor has already provided a Utility Company a deposit equal to, or greater than, two (2) weeks of Utility Services, the Debtor submits that such Utility Company should be deemed to have been provided with adequate assurance of payment as required by section 366 of the Bankruptcy Code.

16.     The Debtor proposes that the Adequate Assurance Deposit be maintained until the earlier of (a) entry of an order of the Court authorizing the return of the Adequate Assurance Deposit to the Debtor, (b) the consummation of a sale of the Debtor's assets under section 363 of the Bankruptcy Code that provides for the release of the Adequate Assurance Deposit, and (c) the effective date of any chapter 11 plan in the Debtor's case.

17.     In addition, the Debtor seeks authority to reduce the Adequate Assurance Deposit to the extent that it includes an amount on account of a Utility Company that the Debtor subsequently determines, in its sole discretion, should be removed from the Utility Services List.

18.     The Debtor submits that the availability of the Adequate Assurance Deposit, together with the Debtor's ability to pay for future Utility Services during this Chapter 11 Case in the ordinary course of business (collectively, the "***Proposed Adequate Assurance***"), constitute adequate assurance of payment to the Utility Companies for purposes of section 366 of the Bankruptcy Code.

19.     Accordingly, the Debtor believes that no other or further assurance of payment is necessary.  If, however, a Utility Company believes that additional or alternative assurance of payment is necessary, the Debtor submits that the Utility Company must request such additional or alternative assurance of payment pursuant to the procedures described below (the "*Adequate Assurance Procedures*").

**ADDITIONAL ADEQUATE ASSURANCE PROCEDURES**

20.     To address the right of any Utility Company under section 366(c)(2) of the Bankruptcy Code to seek additional adequate assurance satisfactory to it, the Debtor proposes the following Adequate Assurance Procedures be adopted:

(a)     If a Utility Company is not satisfied with the Proposed Adequate Assurance and seeks additional adequate assurance of payment, it must serve a request (an "*Additional Assurance Request*") upon (i) the Debtor, National Products Association, 440 1st Street NW, Washington, DC 20001 (*Attn*: Daniel Fabricant, Ph.D., President and Chief Executive Officer); (ii) *proposed* counsel to the Debtor, (a) Squire Patton Boggs (US) LLP, 2550 M Street, NW, Washington, DC 20037 (*Attn:* Christopher J. Giaimo, Esquire and Mark A. Salzberg, Esquire); and (b) Chipman Brown Cicero & Cole, LLP, Hercules Plaza, 1313 North Market Street, Suite 5400, Wilmington, Delaware 19801 (*Attn*: Mark L. Desgrosseilliers, Esquire); (iii) Office of the United States Trustee, J. Caleb Boggs Federal Building, 844 King Street, Suite 2207, Lockbox 35, Wilmington, Delaware 19801 (*Attn*: Richard Schepacarter, Esquire); and (iv) counsel to any statutory committee appointed in this Chapter 11 Case (the "*Notice Parties*").

(b)     Each Additional Assurance Request must (a) be made in writing; (b) set forth the amount and form of additional assurance of payment requested; (c) set forth the type of Utility Services, any account numbers, and the location for which Utility Services are provided; (d) set forth whether the Utility Company holds any deposits or other security, and if so, in what amount; and (e) set forth why the Utility Company believes the Proposed Adequate Assurance is not sufficient adequate assurance of payment.

(c)     Upon the Debtor's receipt of an Additional Assurance Request, the Debtor shall have twenty (20) days from the receipt of such Additional Assurance Request (the "*Resolution Period*") to negotiate with such Utility Company to resolve such Utility Company's request for additional assurance of payment.  The Debtor and the applicable Utility Company also may agree to extend the Resolution Period.

(d)     The Debtor, in its discretion, may resolve any Additional Assurance Request by mutual agreement with the requesting Utility Company and without further order of the Court, and may, in connection with any such resolution, in its discretion, provide the requesting Utility Company with additional assurance of future payment in a form satisfactory to the Utility Company, including, but not limited to, cash deposits, prepayments and/or other forms of security, if the Debtor believes such additional assurance is reasonable. The Debtor may reduce the amount of the Adequate Assurance Deposit by any amount allocated to a particular Utility Company to the extent consistent with any alternative adequate assurance arrangements mutually agreed to by the Debtor and the affected Utility Company.

(e)     If the Debtor determines that an Additional Assurance Request is not reasonable or are not able to resolve such request during the Resolution Period, the Debtor, during or promptly after the Resolution Period, will request a hearing before this Court to determine the adequacy of assurances of payment made to the requesting Utility Company (the "*Determination Hearing*"), pursuant to section 366(c)(3)(A) of the Bankruptcy Code.

(f)     Pending the resolution of the Additional Assurance Request at a Determination Hearing, the Utility Company making such request shall be restrained from discontinuing, altering, or refusing service to the Debtor on account of unpaid charges for prepetition services, the commencement of this Chapter 11 Case, or any objections to the Proposed Adequate Assurance, or requiring the Debtor to furnish any additional deposit or other security for the continued provision of services.

## II.    SUBSEQUENT MODIFICATIONS OF UTILITY COMPANY LIST AND PROCEDURES FOR SUBSEQUENTLY IDENTIFIED UTILITY COMPANIES.

21.     It is possible that, despite the Debtor's efforts, certain Utility Companies have not yet been identified by the Debtor or included on the Utility Service List (each, an "*Additional Utility Company*" and collectively, the "*Additional Utility Companies*"). Thus, promptly upon the discovery of an Additional Utility Company, the Debtor will increase the Adequate Assurance Deposit by an amount equal to approximately two (2) weeks of the Debtor's estimated aggregate utility expense for each Additional Utility Company, unless such Additional Utility Company agrees in writing to a lesser amount, is paid in advance for Utility Services, or already holds a deposit equal to, or greater than, two (2) weeks of Utility Services. In addition, the Debtor requests that the Court provide that the Additional Utility Companies are subject to the

terms of the order approving this Motion on an interim basis (the "*Interim Order*") and a final order on this Motion (the "*Final Order*"), including the Adequate Assurance Procedures.

22.     Further, it is possible that during the course of this Chapter 11 Case, certain Utility Accounts with respect to which funds have been contributed to the Adequate Assurance Deposit will be closed in the ordinary course of the Debtor's business (each, a "*Closed Account*" and collectively, the "*Closed Accounts*").   The Debtor requests that if any Utility Account becomes a Closed Account during the course of this case, the Debtor shall be authorized to decrease the amount of the Adequate Assurance Deposit by withdrawing from Utility Deposit Account the amount deposited with respect to such Closed Account to the extent no dispute regarding postpetition payments exists.

23.     The Debtor maintains that the relief requested in this Motion strikes a fair balance between protecting the rights of the Utility Companies and the rights of the Debtor under the Bankruptcy Code and the need for the Debtor to continue to receive, for the benefit of its estate, the Utility Services upon which it depends.   The Debtor does not believe that the Utility Companies will be prejudiced by the Proposed Adequate Assurance, the requirement to provide the Debtor with uninterrupted access to Utility Services, and the procedures for resolving objections to the Proposed Adequate Assurance.

### III.     PROHIBITION ON ALTERING, REFUSING, OR DISCONTINUING SERVICE.

24.     Pending the entry of interim and final orders with respect to this Motion and pending resolution of any Additional Assurance Request, objection, or Determination Hearing, the Utility Companies, including the Additional Utility Companies, shall be prohibited from (i) discriminating against the Debtor, (ii) altering, refusing, or discontinuing service to the Debtor, or (iii) requiring payment of a deposit or receipt or any other security for continued

service other than the Adequate Assurance Deposit, as a result of the Debtor's bankruptcy filing or any outstanding prepetition invoices.

## BASIS FOR RELIEF

25.    The policy underlying section 366 of the Bankruptcy Code is to protect debtor from utility service cutoffs upon the filing of a bankruptcy case, while at the same time providing utility companies with adequate assurance that the debtor will pay for postpetition services. *See* H R. Rep. No. 95-595, at 350 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5963, 6306; *see also In re Jones*, 369 B.R. 745, 748 (B.A.P. 1st Cir. 2007) ("'The purpose of § 366 is 'to prevent the threat of termination from being used to collect pre-petition debts while not forcing the utility to provide services for which it may never be paid.'") (quoting *Begley v. Philadelphia Elec. Co.*, 760 F.2d 46, 49 (3d Cir. 1985)).  As set forth in this Motion, the relief requested in this Motion is consistent with the Bankruptcy Code's policy goals.

26.    Section 366(c) of the Bankruptcy Code was enacted as part of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("**BAPCPA**") effective as of October 17, 2005. Section 366(c) of the Bankruptcy Code provides clarity as to what constitutes assurance of payment and what factors must be excluded from a court's determination as to the adequacy of the assurance of payment.  More specifically, section 366(c)(1) of the Bankruptcy Code defines "assurance of payment" to mean certain specified forms of security, thereby limiting a court's discretion as to what constitutes "other security" within the meaning of section 366(b) of the Bankruptcy Code.  Further, section 366(c)(1)(B) of the Bankruptcy Code affirmatively excludes from the definition of assurance of payment the availability of an administrative expense priority claim.  In addition, section 366(c)(3)(B) of the Bankruptcy Code

eliminates certain factors from consideration that courts prior to the BAPCPA had used to determine whether adequate assurance of payment had been provided.[4]

27.      While section 366(c) of the Bankruptcy Code clarifies what constitutes assurance of payment and what can be considered in determining whether such assurance is adequate, it is important to recognize that Congress did not abrogate the fundamental premise of section 366(b) of the Bankruptcy Code, or the relevant case law construing such section, by enacting section 366(c) of the Bankruptcy Code. That is, section 366(c) of the Bankruptcy Code, as with section 366(b) of the Bankruptcy Code, provides that the Court is free to determine what amount, if any, is necessary to provide adequate assurance of payment to a utility company. While a court may no longer consider certain facts in determining what constitutes adequate assurance of payment, section 366(c) of the Bankruptcy Code continues to permit a court to determine the amount of deposit necessary to meet the adequate assurance standard.

28.      In addition, the applicable standard for assurance of payment continues to be "adequate." Courts construing section 366(b) of the Bankruptcy Code have long recognized that adequate assurance of payment does not constitute an absolute guarantee of the debtor's ability to pay. *See, e.g., In re Caldor, Inc. - N.Y.*, 199 B.R. 1, 3 (S.D.N.Y. 1996) ("Section 366(b) requires [a] [b]ankruptcy [c]ourt to determine whether the circumstances are sufficient to provide a utility with 'adequate assurance' of payment. The statute does not require an 'absolute guarantee of payment.'") (citations omitted), *aff'd sub nom. Virginia Elec. & Power Co. v. Caldor, Inc. - N.Y.*, 117 F.3d 646 (2d Cir. 1997); *In re Steinebach*, 303 B.R. 634, 641 (Bankr. D. Ariz. 2004) ("Adequate assurance of payment is not, however, absolute assurance . . . . [A]ll § 366(b) requires is that a utility be protected from an unreasonable risk of nonpayment"); *In re*

---

[4]    Section 366(c)(4) of the Bankruptcy Code also permits a utility company to recover or offset against a prepetition security deposit without notice or an order of the court.

*Penn Jersey Corp.*, 72 B.R. 981, 982 (Bankr. E.D. Pa. 1987) (stating that section 366(b) of the Bankruptcy Code "contemplates that a utility receives only such assurance of payment as is sufficient to protect its interests given the facts of the debtor's financial circumstances").

29.     Furthermore, courts have recognized that "[i]n deciding what constitutes 'adequate assurance' in a given case, a bankruptcy court must 'focus upon the need of the utility for assurance, and . . . require that the debtor supply no more than that, since the debtor almost perforce has a conflicting need to conserve scarce financial resources.'" *Virginia Elec. & Power Co.*, 117 F.3d at 650 (emphasis in original) (quoting *Penn Jersey*, 72 B.R. at 985); *see also In re Penn Cent. Transp. Co.*, 467 F.2d 100, 103-04 (3d Cir. 1972) (upholding lower court's decision that no utility deposits were necessary where such deposits "would jeopardize the continuing operation of the [debtor] merely to give further security to suppliers who already are reasonably protected").

30.     Without the Adequate Assurance Procedures, the Debtor could be forced to address numerous requests by Utility Companies in an unorganized manner at a critical period in its sale and restructuring process when its efforts should be focused on stabilizing its operations and maximizing value for all of its stakeholders.   The orderly process contemplated by the Adequate Assurance Procedures is necessary for a smooth transition by the Debtor into Chapter 11 and will aid in its sale and restructuring efforts.   Moreover, the Adequate Assurance Procedures will ensure that all parties act in good faith by establishing a fair process.

31.     Courts in this district have approved similar procedures in other cases. *See, e.g., In re ATD Corporation*, Case No. 18-12221 (KJC) (Bankr. D. Del. Oct. 5, 2018) [Docket No. 99] (order deeming utility providers adequately assured of future performance upon a deposit, equal to two weeks of utilities services, into a segregated account); *In re Welded Construction, L.P.*,

Case No. 18-12378 (KG) (Bankr. D. Del. Oct. 23, 2018) [Docket No. 34] (same); *In re Brookstone Holdings Corp.*, Case No. 18-11780 (BLS) (Bankr. D. Del. Aug. 3, 2018) [Docket No. 68] (same); *In re One Aviation Corp.*, Case No. 18-12309 (CSS) (Bankr. D. Del. Oct. 11, 2018) [Docket No. 49] (same); *In re Southeastern Grocers, LLC*, Case No. 18- 10700 (MFW) (Bankr. D. Del. Mar. 28, 2018) [Docket No. 110] (same); *In re J & M Sales, Inc.*, Case No. 18-11801 (LSS) (Bankr. D. Del. Aug. 7, 2018) [Docket No. 86] (same).[5]

32.    The Debtor submits that, given the foregoing, entry of the Interim and Final Orders is consistent with, and fully satisfies, the requirements of section 366 of the Bankruptcy Code. Far from offering the Utility Companies nominal (or even no) additional assurance of payment, the Debtor has (a) deposited significant cash amounts for the benefit of the Utility Companies, and (b) established procedures pursuant to which the Utility Companies can seek greater or different security. Such assurance of payment should significantly alleviate—if not eliminate—any concern of non-payment on the part of the Utility Companies, and is thus clearly "adequate."

## FINAL HEARING

33.    The Debtor requests that the Court schedule a final hearing date to consider any unresolved objections within thirty (30) days of the Petition Date. Promptly after the entry of the Interim Order, notice of this Motion and the Interim Order shall be given to the Utility Companies identified on the Utility Service List. Pending the resolution of any objections, the Utility Company making such request should be restrained from discontinuing, altering, or refusing to provide service to the Debtor on account of unpaid charges for prepetition services or on account of any objections to the adequate assurance provided.

---

[5]    The referenced orders are voluminous in nature and are not attached to this Motion; however, in light of the requirements of Local Rule 7007-2(a)(vii), undersigned counsel has retained copies of each order, and will make

34.     Any Utility Company that does not object to the proposed Adequate Assurance Procedures should be deemed to have acknowledged that such procedures provide adequate assurance of payment, and should be prohibited from discontinuing, altering, or refusing to provide service on account of any unpaid prepetition charges, or requiring additional assurance of payment.

## **RESERVATION OF RIGHTS**

35.     Nothing contained in this Motion is intended or shall be construed as (i) an admission as to the validity of any claim against the Debtor; (ii) a waiver of the Debtor or any party-in-interest's rights to dispute any claim; or (iii) an approval or assumption of any agreement under section 365 of the Bankruptcy Code.  Likewise, if this Court grants the relief sought in this Motion, any payment made pursuant to the Interim Order or Final Order is not intended and should not be construed as an admission as to the validity of any claim or a waiver of the Debtor's right to dispute such claim at a later date.

## **IMMEDIATE RELIEF IS NECESSARY TO AVOID**
## **IMMEDIATE AND IRREPARABLE HARM**

36.     Bankruptcy Rule 6003 provides that the relief requested in this Motion may be granted if the "relief is necessary to avoid immediate and irreparable harm."  Fed. R. Bankr. P. 6003.  The Debtor submits that for the reasons already set forth in this Motion, the relief requested in this Motion is necessary to avoid immediate and irreparable harm to the Debtor.

them available to the Court or to any party that requests them.

## WAIVER OF ANY APPLICABLE STAY

37.     The Debtor also requests that the Court waive the stay imposed by Bankruptcy Rule 6004(h), which provides that "[a]n order authorizing the use, sale, or lease of property other than cash collateral is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise." Fed. R. Bankr. P. 6004(h).  As described above, the relief that the Debtor seeks in this Motion is necessary for the Debtor to operate its business without interruption and to preserve value for its estate.  Accordingly, the Debtor respectfully requests that the Court waive the fourteen-day stay imposed by Bankruptcy Rule 6004(h), as the exigent nature of the relief sought in this Motion justifies immediate relief.

## NOTICE

38.     Notice of this Motion shall be provided to: (a) the Office of the United States Trustee for the District of Delaware; (b) the Debtor's twenty (20) largest unsecured creditors; (c) the Internal Revenue Service; and (d) the Utility Companies listed on **Schedule 1** annexed to the Final Order.  As this Motion is seeking "first-day" relief, notice of this Motion and any order entered hereon will be served on all parties required by Local Rule 9013-1(m).  Due to the urgency of the circumstances surrounding this Motion and the nature of the relief herein, the Debtor respectfully submits that no further notice of this Motion is required.

## CONCLUSION

*WHEREFORE*, the Debtor respectfully requests that the Court enter interim and final orders, substantially in the forms attached hereto as **Exhibit A** and **Exhibit B**, respectively, granting the relief requested in the Motion and such other and further relief as may be just and proper.

Dated:  August 19, 2019        CHIPMAN BROWN CICERO & COLE, LLP
        Wilmington, Delaware

                              */s/ Mark L. Desgrosseilliers*
                              Mark L. Desgrosseilliers (No. 4083)
                              Hercules Plaza
                              1313 North Market Street, Suite 5400
                              Wilmington, Delaware 19801
                              Telephone:   (302) 295-0191
                              Facsimile:   (302) 295-0199
                              Email:       desgross@chipmanbrown.com

                                   —and—

                              SQUIRE PATTON BOGGS (US) LLP
                              Christopher J. Giaimo (*pro hac vice* pending)
                              Mark A. Salzberg (*pro hac vice* pending)
                              Jeffrey L. Rothleder (*pro hac vice* pending)
                              2550 M Street, NW
                              Washington, DC 20037
                              Telephone:   (202) 457-6000
                              Facsimile:   (202) 457-6315
                              Email:       christopher.giaimo@squirepb.com
                                           mark.salzberg@squirepb.com
                                           jeffrey.rothleder@squirepb.com

                              *Proposed Counsel for the Debtor and*
                              *Debtor-in-Possession*

# EXHIBIT A

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| NATIONAL PRODUCT ASSOCIATION,[1] | Case No. 19-11849 |
| Debtor. | **Related Docket No. _____** |

***INTERIM* ORDER (I) AUTHORIZING THE DEBTOR'S PROPOSED FORM OF ADEQUATE ASSURANCE OF PAYMENT, (II) ESTABLISHING PROCEDURES FOR RESOLVING OBJECTIONS BY UTILITY COMPANIES, (III) PROHIBITING UTILITY COMPANIES FROM ALTERING, REFUSING, OR <u>DISCONTINUING SERVICE, AND (IV) SCHEDULING A FINAL HEARING</u>**

This matter coming before the Court on the *Motion of the Debtor for the Entry of Interim and Final Orders (i) Authorizing the Debtor's Proposed Form of Adequate Assurance of Payment, (ii) Establishing Procedures for Resolving Objections by Utility Companies, (iii) Prohibiting Utility Companies from Altering, Refusing, or Discontinuing Service, and (iv) Scheduling a Final Hearing* (the "***Motion***"); pursuant to sections 105(a) and 366 of the Bankruptcy Code and Bankruptcy Rules 6003 and 6004(h) for an interim order (the "***Interim Order***")[2], (i) authorizing the Debtor's proposed form of adequate assurance of postpetition payment to the Utility Companies, (ii) establishing procedures for resolving any objections by the Utility Companies relating to the Proposed Adequate Assurance, (iii) prohibiting the Utility Companies from altering, refusing, or discontinuing service to, or discriminating against, the Debtor solely on the basis of the commencement of this case, a debt that is owed by the Debtor for services rendered prior to the Petition Date, or on account of any perceived inadequacy of the Debtor's Proposed Adequate

---

[1]    The Debtor in this case, along with the last four digits of the federal tax identification number, is National Product Association (6719).  The Debtor's headquarters are located at 440 1ˢᵗ Street N.W., Suite 520, Washington, DC 20001.

[2]    Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Motion.

Assurance, and (iv) scheduling a hearing on the Motion to consider granting the relief requested in this Interim Order on a final basis (the "***Final Hearing***"), the Court having found that (i) the Court has jurisdiction to consider the Motion and the relief requested therein pursuant to 28 U.S.C. §§ 157, 1334 and the *Amended Standing Order of Reference* from the United States District Court of Delaware, dated February 29, 2012; (ii) this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2); (iii) venue is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409; (iv) notice of the Motion was sufficient under the circumstances and no other or further notice need to be provided; (v) a hearing was held based on the relief requested in the Motion (the "***Hearing***"); and the Court having reviewed the Motion and the First Day Declaration and having considered the statements of counsel and the evidence adduced with respect to the Motion at the hearing; after due deliberation, the Court having determined that the relief requested in the Motion is in the best interests of the Debtor, its estate, its creditors, and all other parties interested in this case; and good and sufficient cause having been shown,

It Is Hereby Ordered That:

1.    The Motion is hereby **GRANTED** on an *interim* basis as set forth in this Interim Order.

2.    Subject to the procedures described below, no Utility Company may (a) alter, refuse, terminate, or discontinue utility services to, or discriminate against, the Debtor on the basis of the commencement of this Chapter 11 Case or on account of outstanding prepetition invoices or (b) require additional assurance of payment, other than the Adequate Assurance Deposit, as a condition to the Debtor receiving such utility services.

3.      As adequate assurance for the payment of Utility Services, the Debtor shall provide a cash deposit of an amount that would satisfy the costs for Utility Services provided by each Utility Company on the Utility Company List for a period of two (2) weeks calculated based on the two-week historical average (the "***Adequate Assurance Deposit***") into a newly created, segregated account (the "***Utility Deposit Account***") for the benefit of Utility Companies, except those Utility Companies that agree in writing to a lesser amount, are paid in advance for Utility Services, or already hold a deposit equal to, or greater than, two (2) weeks of Utility Services.

4.      Except as provided in this Order, with respect to the rights of the Utility Companies, no creditor of the Debtor shall have any interest in or lien on the Adequate Assurance Deposit or the Utility Deposit Account.

5.      The Adequate Assurance Deposit shall be maintained until the earlier of (a) entry of an order of the Court authorizing the return of the Adequate Assurance Deposit to the Debtor, (b) the consummation of a sale of the Debtor's assets under section 363 of the Bankruptcy Code that provides for the release of the Adequate Assurance Deposit, and (c) the effective date of a chapter 11 plan in the Debtor's case.

6.      Subject to the entry of the Final Order and the Adequate Assurance Procedures set forth below, the Adequate Assurance Deposit constitutes sufficient adequate assurance of future payment to the Utility Companies to satisfy the requirements of section 366 of the Bankruptcy Code (the "***Proposed Adequate Assurance***") and no Utility Company shall discontinue Utility Services without complying with the following Adequate Assurance Procedures:

(a)      If a Utility Company is not satisfied with the Proposed Adequate Assurance and seeks additional adequate assurance of payment, it must serve a request (an "***Additional Assurance Request***") upon (i) the Debtor, Natural Products Association, 440 1st Street NW, Washington, DC 20001 (*Attn*: Daniel Fabricant, Ph.D., President and Chief Executive Officer); (ii) *proposed* counsel to the Debtor, (a) Squire Patton Boggs (US) LLP, 2550 M Street, NW, Washington, DC 20037 (*Attn:* Christopher J. Giaimo, Esquire and Mark A. Salzberg, Esquire); and (b) Chipman Brown Cicero & Cole, LLP, Hercules Plaza, 1313 North Market Street,

- 3 -

Suite 5400, Wilmington, Delaware 19801 (*Attn*: Mark L. Desgrosseilliers, Esquire); (iii) (v) Office of the United States Trustee, J. Caleb Boggs Federal Building, 844 King Street, Suite 2207, Lockbox 35, Wilmington, Delaware 19801 (*Attn*: Richard Schepacarter, Esquire); and (iv) counsel to any statutory committee appointed in this Chapter 11 Case (the "***Notice Parties***").

(b)     Each Additional Assurance Request must (a) be made in writing; (b) set forth the amount and form of additional assurance of payment requested; (c) set forth the type of Utility Services, any account numbers, and the location for which Utility Services are provided; (d) set forth whether the Utility Company holds any deposits or other security, and if so, in what amount; and (e) set forth why the Utility Company believes the Proposed Adequate Assurance is not sufficient adequate assurance of payment.

(c)     Upon the Debtor's receipt of an Additional Assurance Request, the Debtor shall have twenty (20) days from the receipt of such Additional Assurance Request (the "***Resolution Period***") to negotiate with such Utility Company to resolve such Utility Company's request for additional assurance of payment. The Debtor and the applicable Utility Company also may agree to extend the Resolution Period.

(d)     The Debtor, in its discretion, may resolve any Additional Assurance Request by mutual agreement with the requesting Utility Company and without further order of the Court, and may, in connection with any such resolution, in their discretion, provide the requesting Utility Company with additional assurance of future payment in a form satisfactory to the Utility Company, including, but not limited to, cash deposits, prepayments and/or other forms of security, if the Debtor believes such additional assurance is reasonable. The Debtor may reduce the amount of the Adequate Assurance Deposit by any amount allocated to a particular Utility Company to the extent consistent with any alternative adequate assurance arrangements mutually agreed to by the Debtor and the affected Utility Company.

(e)     If the Debtor determines that an Additional Assurance Request is not reasonable or are not able to resolve such request during the Resolution Period, the Debtor, during or promptly after the Resolution Period, will request a hearing before this Court to determine the adequacy of assurances of payment made to the requesting Utility Company (the "***Determination Hearing***"), pursuant to section 366(c)(3)(A) of the Bankruptcy Code.

(f)     Pending the resolution of the Additional Assurance Request at a Determination Hearing, the Utility Company making such request shall be restrained from discontinuing, altering, or refusing service to the Debtor on account of unpaid charges for prepetition services, the commencement of this Chapter 11 Case, or any objections to the Proposed Adequate Assurance, or requiring the Debtor to furnish any additional deposit or other security for the continued provision of services.

7.     The Debtor is authorized, as necessary, to provide a copy of this Order, and any final order approving the relief requested in the Motion (when and if entered) (such order, the

"***Final Order***") to any Utility Company not listed on the Utility Service List (each, an "***Additional***

***Utility Company***" and collectively, the "***Additional Utility Companies***"), as such Utility

Companies are identified.  Promptly upon its discovery of an Additional Utility Company, the

Debtor shall increase the Adequate Assurance Deposit by an amount equal to approximately two

(2) weeks of the Debtor's estimated aggregate utility expense for each Additional Utility

Company, unless such Additional Utility Company agrees in writing to a lesser amount, is paid in

advance for Utility Services, or already holds a deposit equal to, or greater than, two weeks of

Utility Services.  The Additional Utility Companies shall be subject to the terms of this Order and

the Final Order, including the Adequate Assurance Procedures.

8.      If any Utility Account becomes a Closed Account during the course of this Chapter

11 Case, without the need for further order of this Court or notice to any parties, the Debtor shall

be authorized to decrease the amount of the Adequate Assurance Deposit by withdrawing from the

segregated account the amount deposited with respect to such Closed Account to the extent no

dispute regarding postpetition payments exists.

9.      A final hearing (the "***Final Hearing***") on the full relief requested in the Motion

shall be held on _____, 2019 at ___:___ ___.m. (*Prevailing* Eastern Time).  Any

objections or responses to entry of a final order on the Motion (each, an "***Objection***") shall be filed

on or before 4:00 p.m. *Prevailing* Eastern Time on _____, 2019, and served on

the following parties: (a) the Debtor, Natural Product Association, 440 1st Street NW, Washington,

DC 20001 (*Attn*: Daniel Fabricant, Ph.D., President and Chief Executive Officer); (b) *proposed*

counsel for the Debtor, (i) Squire Patton Boggs (US) LLP, 2550 M Street, NW, Washington, DC

20037 (*Attn*: Christopher J. Giaimo, Esquire and Mark A. Salzberg, Esquire); and (ii) Chipman

Brown Cicero & Cole, LLP, Hercules Plaza, 1313 North Market Street, Suite 5400, Wilmington,

Delaware 19801 (*Attn:* Mark L. Desgrosseilliers, Esquire);  (c) the Office of the United States

Trustee, J. Caleb Boggs Federal Building, 844 King Street, Lockbox 35, Wilmington, Delaware 19801 (*Attn*: Richard L. Schepacarter, Esquire); and (d) counsel to any official committee of unsecured creditors appointed in this case. In the event no objections to entry of a final order on the Motion are timely received, this Court may enter such final order without need for the Final Hearing.

10.     Nothing in this Interim Order constitutes a finding that any entity is or is not a Utility Company hereunder or under section 366 of the Bankruptcy Code, whether or not such entity is listed on the Utility Company List.

11.     This Order is without prejudice to the rights of the Debtor and its estate to contest the validity, priority, or amounts of any obligations relating to the Utility Companies on any grounds it deems appropriate, and any rights of the Debtor and its estate with respect to such matters shall be reserved.

12.     Notwithstanding the relief granted in this Interim Order or any actions taken hereunder, nothing contained in this Order shall be construed as a request for authority to assume any executory contract under section 365 of the Bankruptcy Code.

13.     The Debtor shall serve a copy of this Order and the Motion, including the proposed Final Order, on each Utility Company listed on the Utility Company List within two (2) business days of the date this Order is entered.

14.     The terms and conditions of this Order shall be effective and enforceable immediately upon its entry.

15.     This Court shall retain jurisdiction with respect to all matters arising from or related to the implementation of this Order.

# EXHIBIT B

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| NATIONAL PRODUCT ASSOCIATION,[1] | Case No. 19-11849 |
| Debtor. | **Related Docket No. _____** |

*FINAL* **ORDER (I) AUTHORIZING THE DEBTOR'S PROPOSED
FORM OF ADEQUATE ASSURANCE OF PAYMENT, (II) ESTABLISHING
PROCEDURES FOR RESOLVING OBJECTIONS BY UTILITY
COMPANIES, AND (III) PROHIBITING UTILITY COMPANIES
FROM ALTERING, REFUSING, OR DISCONTINUING SERVICE**

This matter coming before the Court on the motion (the "***Motion***")[2] of the above-captioned

debtor and debtor-in-possession (the "***Debtor***") for the entry of interim and final orders, pursuant

to section 366 of the Bankruptcy Code (i) authorizing the Debtor's proposed form of adequate

assurance of postpetition payment to the Utility Companies; (ii) establishing procedures for

resolving any objections by the Utility Companies relating to the Proposed Adequate Assurance;

and (iii) prohibiting the Utility Companies from altering, refusing, or discontinuing service to, or

discriminating against, the Debtor solely on the basis of the commencement of this case, a debt

that is owed by the Debtor for services rendered prior to the Petition Date, or on account of any

perceived inadequacy of the Debtor's Proposed Adequate Assurance; all as further described in

the Motion; the Court having found that (i) the Court has jurisdiction to consider the Motion and

the relief requested in the Motion pursuant to 28 U.S.C. § 1334 and the *Amended Standing Order*

*of Reference* from the United States District Court of Delaware, dated February 29, 2012; (ii) this

is a core proceeding pursuant to 28 U.S.C. § 157(b)(2); (iii) venue is proper in this District pursuant

---

[1]   The Debtor in this case, along with the last four digits of the federal tax identification number, is National Product Association (6719).  The Debtor's headquarters are located at 440 1st Street N.W., Suite 520, Washington, DC 20001.

[2]   Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Motion.

to 28 U.S.C. § 1408; and (iv) notice of the Motion was sufficient under the circumstances and no other or further notice need to be provided; and the Court having reviewed the Motion and the First Day Declaration and having considered the statements of counsel and the evidence adduced with respect to the Motion at the interim hearing; and the Court having granted interim relief on the Motion on _____, 2019 [Docket No. _____]; and the Court having held the final hearing on the Motion; after due deliberation, the Court having determined that the relief requested in the Motion is in the best interests of the Debtor, its estate, its creditors, and all other parties interested in this case; and good and sufficient cause having been shown,

**IT IS HEREBY ORDERED THAT:**

    1.    The Motion is **GRANTED** on a final basis as set forth in this final order (the "***Final Order***").

    2.    All Utility Companies are prohibited from altering, refusing, or discontinuing Utility Services to the Debtor, or otherwise discriminating against the Debtor on account of the Debtor's bankruptcy filing or any outstanding prepetition invoices.

    3.    Any Utility Company that is paid in advance for Utility Services or to which the Debtor already provided a deposit equal to, or greater than, two (2) weeks of Utility Services shall be deemed to have received adequate assurance of payment as required by section 366 of the Bankruptcy Code.

    4.    If any amount relating to postpetition Utility Services provided by a Utility Company is unpaid beyond any applicable grace period, such Utility Company may request a disbursement from the Utility Deposit Account (a "***Disbursement Request***") by giving written notice to *proposed* counsel to Debtor, (i) Squire Patton Boggs (US) LLP, 2550 M Street, NW, Washington, DC 20037 (*Attn:* Christopher J. Giaimo, Esquire and Mark A. Salzberg, Esquire);

and (ii) Chipman Brown Cicero & Cole, LLP, Hercules Plaza, 1313 North Market Street, Suite 5400, Wilmington, Delaware 19801 (*Attn*: Mark L. Desgrosseilliers, Esquire).  A Disbursement Request shall only be honored on the date that is three business days after the date of receipt of such Disbursement Request.

5.      Except as provided in this Final Order with respect to the rights of the Utility Companies, no creditor of the Debtor shall have any interest in or lien on the Adequate Assurance Deposit or the Utility Deposit Account.

6.      The Adequate Assurance Deposit shall be maintained until the earlier of (a) entry of an order of the Court authorizing the return of the Adequate Assurance Deposit to the Debtor, (b) the consummation of a sale of the Debtor's assets under section 363 of the Bankruptcy Code that provides for the release of the Adequate Assurance Deposit, and (c) the effective date of any chapter 11 plan in the Debtor's case.

7.      The Debtor is authorized to amend, as necessary, the Utility Company List by adding or deleting a Utility Company, which amendment shall be accompanied by filing with this Court a notice of such amendment and serving such amendment on the affected Utility Company.

8.      The Debtor is authorized, as necessary, to provide a copy of this Order and the Utility Service List to any Utility Company not listed on the Utility Service List (each, an "*Additional Utility Company*" and collectively, the "*Additional Utility Companies*"), as such Utility Companies are identified.  Promptly upon its discovery of an Additional Utility Company, the Debtor shall increase the Adequate Assurance Deposit by an amount equal to approximately two (2) weeks of the Debtor's estimated aggregate utility expense to each Additional Utility Company, unless such Additional Utility Company agrees in writing to a lesser amount, is paid in advance for Utility Services, or already holds a deposit equal to, or greater than, two weeks of

Utility Services. The Additional Utility Companies shall be subject to the terms of this Order, including the Adequate Assurance Procedures.

9.      A Utility Company shall be deemed to have adequate assurance of payment under section 366 of the Bankruptcy Code unless and until: (a) the Debtor, in its discretion, agrees to an alternative assurance of payment; or (b) this Court enters an order after a Determination Hearing requiring that additional adequate assurance of payment be provided to the Utility Company.

10.     If any Utility Account becomes a Closed Account during the course of the Chapter 11 Case, without the need for further order of this Court or notice to any parties, the Debtor shall be authorized to decrease the amount of the Adequate Assurance Deposit by withdrawing from the segregated account the amount deposited with respect to such Utility Account to the extent no dispute regarding postpetition payments exists.

11.     This Order is without prejudice to the rights of the Debtor and its estate to contest the validity, priority or amounts of any obligations relating to the Utility Companies on any grounds it deems appropriate, and any rights of the Debtor and its estate with respect to such matters shall be reserved.

12.     The Debtor is authorized to reduce the Adequate Assurance Deposit to the extent that it includes an amount on account of a Utility Company that the Debtor subsequently determines, in its sole discretion, should be removed from the Utility Company List.

13.     Notwithstanding the relief granted in this Order or any actions taken hereunder, nothing contained in this Order shall create any rights in favor of, or enhance the status of any claim held by, any Utility Company.

14.    Notwithstanding the relief granted in this Order or any actions taken hereunder, nothing contained in this Order shall be construed as a request for authority to assume any executory contract under section 365 of the Bankruptcy Code.

15.    The Debtor's service of the Motion, the Interim Order, or this Final Order upon the Utility Companies shall not constitute an admission or concession that any such entity is a utility company within the meaning of section 366 of the Bankruptcy Code, and all rights and defenses of the Debtor are reserved with respect thereto.

16.    The Debtor is authorized and empowered to take all actions necessary to implement the relief granted in this Order.

17.    Notwithstanding any Bankruptcy Rule to the contrary, this Order shall be immediately effective and enforceable upon its entry.

18.    This Court shall retain jurisdiction to hear and determine all matters arising from or related to the implementation, interpretation or enforcement of this Order.

## SCHEDULE 1

| UTILITY | ACCOUNT NUMBERS | TYPE OF SERVICE | AVERAGE MONTHLY COST | DEPOSIT/PREPAID | ADEQUATE ASSURANCE |
|---|---|---|---|---|---|
| Comcast | 8299 70 004 1663293 | Cable | $250.00 | $0.00 | $150.00 |
| Allied Telecom Group, LLC | 00003661 | Telephone | $850.00 | $0.00 | $450.00 |